ELLIS, Judge.
Plaintiff WPL Marine Services, Inc. negotiated the purchase of the MV “Toledo” from Atlantic Towing Corporation in August, 1974, for the price of $185,000.00, and sought financing of $160,000.00 of that amount from Woods-Tucker Aircraft & Marine Leasing Corporation. On October 15, 1974, Atlantic sold the “Toledo” to Woods, and on October 16, 1974, Woods and WPL entered into a “Bareboat Charter/Lease Agreement and Guaranty”, by virtue of which Woods, as owner, leased the “Toledo” to WPL for 60 months, at a monthly rental *1305 of $3,920.00, or a total of $235,200.00. The agreement required that WPL carry full hull insurance in the amount of $160,000.00. It grants no right or option to WPL to purchase the vessel.
Section 21 of the lease provides as follows:
“21. LOSS AND DAMAGE
“Charterer assumes all risk of loss or damage to the vessel from any and every cause whatsoever, whether or not such loss or damage is covered by insurance on the vessel. No loss or damage to the vessel, or to any part thereof, shall relieve Charterer of any obligation hereunder.
“In the event of loss or damage, Owner shall have the option to require Charterer to:
“(a) Repair or restore the vessel to good condition and working order, unless the cost thereof exceeds the ‘Stipulated Loss Value,’ or
“(b) Pay Owner in cash the ‘Stipulated Loss Value’ as set forth in Exhibit B hereto. Upon payment of the ‘Stipulated Loss Value,’ this Lease shall terminate and Charterer shall become entitled to said vessel in its then existing condition without any warranty of Owner, express or implied, with respect to any matter whatsoever.”
“Exhibit B” referred to above was never prepared, and was therefore never attached to the agreement.
In August, 1976, the “Toledo,” the name of which had been changed to “Jerri Watson”, sank in the Mississippi River, and was declared a total loss by the insurer. A check for $160,000.00 was issued by the insurer to Woods and WPL as loss payees under the policy. When WPL inquired as to the Stipulated Loss Value under Section 21(b) of the lease, supra, it was advised that the total due was $125,590.55, consisting of $109,590.55 for the rental, as discounted, and a “residual charge” of $16,000.00. WPL concedes that it owes the $109,590.55, but denies that there was ever any agreement to pay the $16,000.00 residual charge.
Plaintiff then brought this suit, characterizing the transaction between it and Woods as a loan, alleging that title to the vessel was to be returned to WPL at the end of the agreement, and asking that the payoff figures be fixed at $109,590.55, and that the Bareboat Charter be decreed to be a usurious instrument.
In its answer, Woods specifically denied that the transaction was anything but a pure lease, and alleged that the $16,000.00 was properly due it under the provisions that should have been incorporated in Exhibit B. It also reconvened for various items, but since the reconventional demand was denied and Woods has not appealed, or answered WPL’s appeal, that part of the case is not before us. By agreement between the parties the proceeds of the settlement were placed in a certificate of deposit in the Hibernia National Bank of New Orleans.
After trial on the merits, the judge found the agreement between the parties to be a pure lease and that Woods had failed to prove that it was entitled to the $16,000.00. He signed a judgment giving plaintiff $16,-000.00 of the draft and defendant $109,-509.55. On motion for new trial, he further ordered that the parties divide the balance of the draft in proportion to their insurable interests, giving WPL $5,040.00 and Woods $29,450.00. From these judgments, plaintiff has appealed.
In this court, plaintiff argues that the trial court erred in not applying the law of the State of Mississippi to the interpretation of the agreement, as therein stipulated. He claims that if Mississippi law is applied to the contract, it will be found to be a lease for security, which is a type of loan contract, rather than a pure lease, and, therefore, usurious on its face under Mississippi law.
The applicable statutory law of Mississippi is the Uniform Commercial Code, which was adopted prior to the confection of this agreement. Section 1-201(37) provides, in part:
“Whether a lease is intended as security is to be determined by the facts of each *1306 case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.”
The jurisprudence of Mississippi has consistently held that leases not containing an option to purchase are not intended to be leases for security.
The trial judge did consider Mississippi law and was of the opinion that the agreement herein was a pure lease and not a lease of security under both Louisiana and Mississippi law. He refused to admit parol evidence intended to show otherwise, on the ground that the lease was not ambiguous, and needed no explanation. We find his rulings to be correct in all respects. The terms of the lease are unequivocal in defining and limiting the right of the parties, and there is nothing to indicate that it was intended to be anything other than a pure lease. That being the case, the transaction can not be characterized as a lease for security, and the usury laws of Mississippi have no application.
However, we are of the opinion that the trial court erred in prorating the proceeds of the insurance policy as he did. Under the specific provisions of Section 21 of the lease, supra, the owner is entitled to nothing more than the stipulated loss value of the vessel in the event it becomes a total loss. Since the lessee becomes the owner of the vessel, he is entitled to the proceeds of the insurance policy, because the former owner no longer has any insurable interest therein.
The trial judge found the stipulated loss value of the “Jerri Watson” to be $109,-590.55, although he inadvertently signed a judgment for $109,509.55. This determination is one of fact, based on the resolution of conflicting testimony by the witnesses for the parties hereto, and we find no manifest error therein. However, the judgment must be amended so as to award the remainder of the proceeds of the insurance policy to plaintiff WPL.
The judgment appealed from is therefore amended so as to decree that plaintiff WPL Marine Services, Inc. is entitled to the sum of $50,409.45 from the proceeds of the insurance draft of $160,000.00, and defendant Woods-Tucker Aircraft & Marine Leasing Corp. is entitled to the balance of $109,-590.55. The interest earned on the certificate of deposit for $160,000.00 in the Hibernia National Bank of New Orleans shall be prorated between the parties in proportion to the proceeds of the draft to be received by each.
All costs are to be paid by defendant Woods-Tucker Aircraft & Marine Leasing Corp.
AMENDED AND AFFIRMED.