**In re Shelby Gean LOAGUE, Debtor.**

**EQUILEASE CORPORATION, Plaintiff,**

**v.**

**Shelby Gean LOAGUE, Defendant.**

**Bankruptcy No. S81–10214.
Adv. No. S81–1180.**

United States Bankruptcy Court,
N.D. Mississippi.

Dec. 23, 1982.

---

Edwin H. Roberts, Jr., of Roberts & Clisby, P.A., Oxford, Miss., for plaintiff.

Sam M. Reedy, Fulton, Miss., for defendant.

Jacob C. Pongetti, Columbus, Miss., trustee.

## MEMORANDUM OPINION

EUGENE J. RAPHAEL, Bankruptcy Judge.

Debtor, Shelby Gean Loague, filed a petition under Chapter 7 of the 1978 Bankruptcy Code on April 28, 1981. On June 30, 1981, Equilease Corporation, a creditor, as plaintiff, filed a complaint naming only Shelby Gean Loague, debtor, as defendant, but plaintiff's attorney appended to the original complaint certificates of service indicating service of copies of the original complaint both on Honorable Sam M. Reedy, debtor's attorney and Honorable Jacob C. Pongetti, trustee. The complaint prayed for modification of the automatic stay so as to permit Equilease Corporation to take possession of "its property" and dispose of "said property" according to its "lease agreement", for the release of plaintiff and its surety on a bond which plaintiff had posted with the trustee for the release of such property, and that the property (a 1979 Freightliner motor vehicle) be "finally removed" (abandoned) from the estate of the bankrupt (debtor). Both certificates of service were dated July 7, 1981. Also on June 30, 1981, this court entered its order shortening time to answer so as to require answer or motion not later than July 22, 1981. Said order also set the trial of said complaint for July 28, 1981. The only named defendant, Shelby Gean Loague, did not answer or otherwise respond to the complaint, but Jacob C. Pongetti, trustee, describing himself as a defendant in the heading of his pleading, filed a document in this adversary proceeding in the form of an answer, but styled "Objection to Abandonment of Motor Vehicle", on July 20, 1981. Included in the trustee's answer is a counterclaim which concludes with the following allegations which are tantamount to prayers for relief:

"Wherefore, the trustee is entitled to judgment holding that the 'automotive lease' is in fact a security agreement, that Shelby Loague is in fact owner of the vehicle in question, that the security interest is invalid as against the trustee, the same having not been properly perfected, that the vehicle should be preserved for the estate, that Equilease Corporation deliver over possession of said vehicle to the trustee at its expense, all costs of this cause and such further relief as may be just."

Equilease Corporation, plaintiff, filed its "Response to Objection to Abandonment of Motor Vehicle", including an answer to trustee's counterclaim, on July 27, 1981. Although such "response" filed by plaintiff again named only Shelby Gean Loague as a defendant, plaintiff's attorney again included certificates of service both on the trustee and debtor's attorney.

On July 28, 1981, the adversary proceeding was continued by court-approved stipulation of plaintiff and the trustee. The hearing on the merits of the complaint was conducted on September 22, 1981.

There is in evidence a written document described on the face thereof as "Automotive Lease" made on April 27, 1979, between Equilease Corporation, "Lessor" and Shelby Loague, "Lessee", for what is described in Schedule A–1 forming a part thereof as a leasing of a new 1979 Mack vehicle for a term of forty-eight months on the rental bases of one monthly rental of $1,500.00 and forty eight monthly rentals of $1,236.69. The signature section to the general provisions pages of said document reflects the April 27, 1979, signature of Shelby Loague (witnessed by Jack Wilson, described in the record as an employee of

Equilease Corporation), and includes the lessor's date line notation "Accepted and Executed by Lessor this 7th day of May, 1979", but does not reflect the corporate signature of Equilease Corporation. However, the said Schedule A–1 forming a part of said lease and constituting the last page thereof includes both the April 27, 1979, signature of Shelby Loague (described as lessee) and the ostensible corporate signature of Equilease Corporation shown as follows: "AGREED TO: EQUILEASE CORPORATION _____, LESSOR By (partially illegible signature) (Title)".

The next exhibit in the record is a "bill of sale" from Parker Used Parts to "Equilease Corporation (Shelby Loague)", 5100 Poplar Avenue, Memphis, Tenn. 38104, for a WHITE 1979 FLT 8664T TRACTOR, Serial Number CA213HP160783 NEW. The total consideration shown as "cash on delivery" is $42,252.50. The bill of sale is signed by J.R. Parker (ostensibly for Parker Used Parts, seller) and by the aforementioned Jack Wilson (shown in this record to be a representative of Equilease Corporation), who signed on a line provided for "purchaser".

Another exhibit is the statutory and regulatory State of Mississippi, Motor Vehicle Comptroller, Title Division, form for Application for Certificate of Title to a certain motor vehicle described as 79 FL FLT New Body DS, vehicle identification number CA 213HP160783, purchased from Parker Used Parts, indicating the owner to be "Equilease Corp. c/o (SHELBY LOAGUE)", 5100 Poplar Ave. 2410, Memphis, Tenn. 38117. Said application for certificate of title bears the signature of Parker Used Parts by J.R. Parker, and the owner's signature is shown as the aforementioned Jack Wilson. The date of said application is 4–27–79.

Included also in the record is a document entitled "SUBSTITUTION OF COLLATERAL", dated May 21, 1979, showing Equilease Corporation as "Lessor" and Shelby Loague as "Lessee". Said substitution of collateral mentions that as to a certain lease bearing date the 27th day of April, 1979, the Lessor did lease to Lessee certain property therein described, and that Lessor, at the request of the Lessee, has agreed to substitute, subject to said lease, a 1979 Freightliner S/N CA213HP160783 for a 1979 Mack S/N RWS767LST42221.

Still another documentary exhibit is a copy of the statutory and regulatory Mississippi Certificate of Title of a Motor Vehicle, bearing title date 03/03/81, describing the aforementioned 1979 Freightliner, indicating the owner to be "Equilease Corp c/o Shelby Loague", 5100 Poplar Ave. 2410, Memphis, TN 38101 and similarly indicating the first lienholder to be "Equilease Corp. c/o Shelby Loague", 5100 Poplar Ave. 2410, Memphis, TN 38101.

The final document in evidence is the bond of Equilease Corporation, signed by said corporation on June 23, 1981, in the penal sum of $35,000.00, given to the trustee contemporaneously with the release of the aforementioned 1979 Freightliner by the trustee to said Equilease Corporation, conditioned on the prosecution to effect of "this Writ of Abandonment" and requiring the return of said 1979 Freightliner if return thereof be adjudged. Said bond is shown as approved by "Jacob Pongetti" (no title shown) on June 29, 1981.

Without objection the witness, Gerald Carr, Assistant Vice-President in the legal department of Equilease Corporation, New York, New York, testified not only from the standpoint of business records information, but also as to his hearsay information as to the circumstances in this case. He affirmed that the first transaction between Equilease and the debtor was the April 27, 1979, leasing of the 1979 Mack motor vehicle by Equilease as lessor to Shelby Loague as lessee. He averred that the 1979 Freightliner was purchased by Equilease from Parker Used Parts and on May 21, 1979 was substituted as "collateral" for the 1979 Mack mentioned in the April 27, 1979, lease. He vouched for the fact that in the meantime, promptly after the purchase of the 1979 Freightliner by Equilease, Equilease applied for and was granted a certificate of title in accordance with the laws of the State of Mississippi. He indicated that when debtor became delinquent by not pay-

ing certain installments which had accrued under the lease in June, 1981, at which time the 1979 Freightliner was stored with a third party in Mississippi, Equilease arranged with the trustee in this Chapter 7 proceeding to post bond in the amount of $35,000.00 in order to obtain possession of said 1979 Freightliner. Equilease then took said 1979 Freightliner to the State of Missouri and sold it, applying the proceeds of the sale to the leasehold indebtedness. Mr. Carr testified that debtor at that time had paid rental payments aggregating $23,954.03 under the lease, that sale of the subject vehicle was made for $22,000.00 and that debtor then remained indebted to Equilease for a balance of $11,984.38.

The debtor, Shelby Gean Loague, was called as a witness. He conceded that there was a delinquency at the time when he filed his Chapter 7 petition herein. He also indicated that he cannot dispute the fact that the balance owing by him to Equilease after applying the proceeds of the sale of the truck to such indebtedness is "almost $12,000.00". On the other hand, Mr. Loague did not concede the assertion of ownership of the 1979 Freightliner by Equilease. Mr. Loague sought by parol evidence to show that there was an oral agreement between him and Equilease at the time of the execution of the lease agreement and that after he completed his obligation to pay all installments under the lease, the motor vehicle would become debtor's property. However, he conceded that no purchase agreement appears in the written lease.

Ralph G. Roy, Tax Assessor and Tax Collector of Lafayette County, Mississippi, when called as a witness, simply described the general routine followed by his office in handling applications for title certificates to motor vehicle under the Mississippi Title Registration Law.

When recalled to the witness stand debtor, Shelby Gean Loague, conceded that he clearly understood that all of his lease payments as to the subject motor vehicle would be 100% deductible as taxes; whereas, if he had purchased the vehicle, this would not be the case. He also conceded that even under his assertion of an oral purchase agreement he had absolutely no authority to sell the truck "until it was paid off".

Addressing debtor's assertion that there was a contemporaneous oral agreement (nowhere appearing in the written lease agreement) that title would ultimately be transferred from Equilease to debtor after full payment of rentals under the lease, the court considers the following discussion of the Parol or Extrinsic Evidence Rule appearing in 30 Am.Jur.2d, para. 1016 (Evidence), commencing at page 149, pertinent:

> The well-established general rule is that where the parties to a contract have deliberately put their engagement in writing in such terms as import a legal obligation without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the entire engagement of the parties, and the extent and manner of their undertaking, have been reduced to writing, and all parol evidence of prior or contemporaneous conversations or declarations tending to substitute a new and different contract for the one evidenced by the writing is incompetent. Stated otherwise, the intention of the parties as evidenced by the legal import of the language of a valid written contract cannot ordinarily be varied by parol proof of a different intention ... The Parol Evidence Rule is founded upon the principle that when the parties have discussed and agreed upon their obligations to each other and reduced those terms to writing, the writing, if clear and unambiguous, furnished better and more definite evidence of what was undertaken by each party than the memory of man, and applies to exclude extrinsic utterances when it is sought to use those utterances for the purpose for which the writing was made, such writing superseding them as the legal act ... The rule rests upon a rational foundation of experience and policy and is essential to the certainty and stability of written obligations. It is designed to permit a party to a written contract to protect himself from perjury, infirmity of memory, or the death of wit-

nesses ... The Parol Evidence Rule applies to exclude not merely oral utterances, but also informal writings other than the single and final written memorial. The real objection to the use of Parol Evidence is not that it is oral as distinguished from written, but that it is extrinsic, and tends to prove what is not a term of the contract...

Although the record contains no objection predicated on the Parol Evidence Rule, the question of the presence of parol evidence in a record, with or without objection, is discussed in 30 Am.Jur.2d, para. 1022 (Evidence), commencing at page 156, as follows:

It has been generally held that the admission of testimony in violation of the Parol Evidence Rule does not make the testimony competent, whether it is admitted without, or over, objection. Such evidence will be disregarded even though no objection is made thereto. It follows that objection to the admission of Parol testimony is not waived merely by reason of the fact that it was not made at the time the evidence was offered...

■ Accordingly, debtor's assertion of a verbal agreement made in conjunction with the written lease agreement must be disregarded in this case.

Nevertheless, resort may be had to the documentary evidence in order to determine whether the transaction between Equilease and Shelby Gean Loague was a true lease of the subject property or sale in which the "lease" was intended as security. In this connection the definition of "security interest" found in section 75–1–201(37) (UCC–General Provisions), Mississippi Code of 1972, as amended, reads in pertinent part as follows:

" ... Whether a lease is intended as security is to be determined by the facts of each case; however, (a) The inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) An agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security..."

■ A careful perusal of the subject "automotive lease" (Exhibit "1" in this record) discloses that there is no agreement that upon compliance with the terms of the lease that lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration. Indeed, the "automotive lease" contains no language which would extend in any way the possessory rights of lessee to the subject property beyond the stated term of the lease.

Factors which courts usually consider in determining whether a lease or a sale is intended are discussed by the Court of Appeals for the State of Colorado in *Lease Finance, Inc., v. Burger,* 40 Colo.App. 107, 575 P.2d 857 (1977) 575 P.2d at page 859, wherein the court stated, inter alia:

Indicative factors may include: (1) Whether the lessee is given an option to purchase the equipment, and, if so, whether the option price is nominal ... (2) Whether the lessee acquires any equity in the equipment ...; (3) Whether the lessee is required to bear the entire risk of the loss; or (4) Pay all charges and taxes imposed on ownership; (5) Whether there is a provision for acceleration of rental payments; (6) Whether the property was purchased specifically for lease to this lessee ...; and (7) Whether the warranties of merchantability and fitness for a particular purpose are specifically excluded by the lease agreement ...

Under the foregoing criteria, we recognize that the master lease agreement does contain some attributes of an installment sales contract. The lessee is required to bear the entire risk of loss and to pay all taxes imposed on the equipment. The agreement does contain a provision for acceleration of rental payments in the event of default, and does purport specifically to exclude the warranties of merchantability and fitness, and the equipment was purchased specifically for the Burgers' use. However, the fact that the written agreement did not

grant the Burgers an option to purchase the equipment and other evidence that both parties apparently intended the transaction to be a lease, support the trial court's determination of this issue...

The Court of Appeals of North Carolina reached a similar result in *Borg-Warner Acceptance Corp. v. David*, 32 N.C.App. 559, 232 S.E.2d 867, (1977), wherein the court stated, inter alia, 232 S.E.2d at page 869:

The determinative question is whether the trial court was correct in its conclusion that the 10 November, 1972, agreement was a lease rather than a security agreement. We hold that it was.

The instrument on its face is designated a lease in which plaintiff is named as lessor and Key, Inc., is named as lessee. It is for a fixed term of sixty months and specifies the amount of the monthly rental payments to be made by the lessee to the lessor. In addition the instrument contains the following provisions: No title or right in the equipment passes to lessee except the rights expressly granted; the equipment "shall always remain and be deemed personal property even though attached to the realty"; the lessee agrees to keep the leased property "in first-class condition and repair" at lessee's expense, and all "repairs or accessories made to or placed in or upon said equipment shall become a component part thereof and title thereto shall be immediately vested in lessor and shall be included under the terms" of the lease; on expiration of the rental period or other termination of the lease the leased equipment is to be shipped to lessor at lessee's expense. More importantly, nowhere in the instrument is the lessee given any right to renew the lease, to extend its term, or to purchase the leased property. Such arrangement is a valid lease and not a security agreement...

In *WPL Marine Services, Inc. v. Woods-Tucker Aircraft*, La.App., 361 So.2d 1304, (1978), the Court of Appeal of Louisiana, First Circuit, had occasion to construe Mississippi law related to the aforementioned standard UCC statutory provision. That court said at page 1305, inter alia:

After trial on the merits, the judge found the agreement between the parties to be a pure lease ... from these judgments plaintiff has appealed.

In this court, plaintiff argues that the trial court erred in not applying the law of the State of Mississippi to the interpretation of the agreement, as therein stipulated. He claims that if Mississippi Law is applied to the contract, it will be found to be a lease for security, which is a type of loan contract, rather than a pure lease, and, therefore, usurious on its face under Mississippi Law.

The applicable statutory law of Mississippi is the Uniform Commercial Code, which was adopted prior to the confection of this agreement. Section 1–201(37) provides, in part: (Here the Louisiana Court quotes the aforementioned Mississippi statutory provision.) ...

The Jurisprudence of Mississippi has consistently held that leases not containing an option to purchase are not intended to be leases for security.

The trial judge did consider Mississippi Law and was of the opinion that the agreement herein was a pure lease and not a lease of security under both Louisiana and Mississippi Law. He refused to admit parol evidence intended to show otherwise, on the ground that the lease was not ambiguous, and needed no explanation. We find his rulings to be correct in all respects. The terms of the lease are unequivocal in defining and limiting the right of the parties, and there is nothing to indicate that it was intended to be anything other than a pure lease. That being the case, the transaction cannot be characterized as a lease for security, and the usury laws of Mississippi have no application...

■  Applying the foregoing principles of construction to the facts herein, the documentary evidence fully supports the contention by Equilease that its ownership of the subject 1979 Freightliner commenced with the purchase thereof from Parker Used Parts, that said Freightliner was lawfully

substituted as *leased* property in the *lease* of April 27, 1979, and that said Freightliner continued to be owned by Equilease until it was sold by Equilease in the State of Missouri after being released under bond to Equilease at the time of filing of the Chapter 7 petition in 1981 (Emphasis supplied). The trustee's contention that Shelby Loague is in fact owner of the vehicle is without foundation in the evidence.

The remaining contention by trustee herein is that the security interest of Equilease is allegedly invalid as against the trustee, the same allegedly having not been properly perfected.

In pertinent part, section 63–21–15 (Application for First Certificate of Title), Mississippi Code of 1972, which was in effect at pertinent times herein, provides:

(1) The application for the first certificate of title of a vehicle in this state shall be made by the owner to a designated agent, on the form the comptroller prescribes, and shall contain:

(a) The name, current residence and mailing address of the owner;

(b) A description of the vehicle including the following data: year, make, model, vehicle identification number, type of body, the number of cylinders, and whether new or used; and

(c) The date of purchase by applicant, the name and address of the person from whom the vehicle was acquired, and the names and addresses of any lienholders in the order of their priority and the dates of their security agreements.

Also in effect at all pertinent times herein was the following language, inter alia, contained in section 63–21–43 (Perfection of Security Interests), Mississippi Code of 1972:

"(2) A security interest is perfected by the delivery to the comptroller of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement, a copy of the security interest document, and the required fee."

In pursuit of his argument that the security interest herein had not been properly perfected as against the trustee, the trustee suggested that the true owner's name is not found in the application for title certificate or in the certificate of title. If, arguendo, such were the case, this point has been resolved adversely to the trustee's contentions in *Matter of Williams,* 608 F.2d 1015 (5th Cir.1979), decided by the United States Court of Appeals, Fifth Circuit, on the basis of a case which had arisen in this court. While considering the argument in the Williams case that the owner's name had not been listed, the Fifth Circuit opinion stated, inter alia:

"There is no requirement that the owner's name be listed."

*Matter of Williams, supra,* at page 1017.

As to trustee's contention that in the instant case Equilease Corporation ambiguously appears on the certificate of title both as owner and as lienholder, a sufficient resolution is found in the case of *In re Circus Time, Inc.,* 641 F.2d 39 (1st Cir.1981), decided by the United States Court of Appeals for the First Circuit. That court said at page 42 in said opinion:

"Absolute compliance with the requirements of the certificate of title acts is not necessary to perfect a security interest in a vehicle. Courts have properly interpreted such acts in light of the perfection provisions of the Uniform Commercial Code, which recognize as effective to perfect a security interest any filing that substantially complies with the requirements of the Code even though it contains minor errors which are not seriously misleading."

The First Circuit opinion cited with approval the *In re Williams* opinion, supra.

Accordingly, this court finds that plaintiff has sustained its burden of proof as to the allegations of the complaint, and that the answer and counterclaim of the trustee are without merit.

A judgment will be entered in accordance with this opinion.