575 P.2d 857 (1978)
LEASE FINANCE, INCORPORATED, Plaintiff-Appellee,
v.
William BURGER and Dorothy Burger, d/b/a Highlander Center, a general partnership, Defendants-Appellants and Cross-Appellants, and
Cowell Sales Co., Inc., a Colorado Corporation, Defendant-Appellant and Cross-Appellee.
No. 76-563.
Colorado Court of Appeals, Division III.
September 29, 1977.
Rehearing Denied November 10, 1977.
Certiorari Denied February 21, 1978.
*858 Balaban & Lutz, John A. Lobus, Denver, for plaintiff-appellee.
Overton, Dittemore & Nutt, P. C., John H. Brown, Guy M. Heyl, Englewood, for defendants-appellants and cross-appellants.
Myrick & Newton, P. C., Robert Newton, Jennifer K. Brown, Denver, for defendant-appellant and cross-appellee.
RULAND, Judge.
Plaintiff, Lease Finance Incorporated, brought this action against defendants, Cowell Sales Co., Inc., and William and Dorothy Burger, for conversion of a 12-pound capacity dry cleaning machine; Lease Finance also claimed damages from the Burgers for breach of a lease agreement pertaining to that machine. Cowell Sales cross-claimed against the Burgers for indemnity on the conversion claim and sought damages for breach of a contract for sale of an 18-pound capacity dry cleaning machine and other items. The Burgers asserted cross-claims against Cowell Sales for breach of warranty on the 12-pound machine. The Burgers appeal from judgments entered in favor of Lease Finance and Cowell Sales. Cowell Sales appeals from a judgment entered against it in favor of Lease Finance. We affirm in part, reverse in part, and remand for further proceedings.
The record reflects the following sequence of events. On March 1, 1972, Cowell Sales entered into a contract with the Burgers to sell them the 12-pound machine for a laundromat operated by the Burgers. An invoice dated September 29 indicates that the transaction was completed on that date, and that the Burgers paid for the machine. At some point the Burgers determined that it would be preferable to lease the machine instead of purchase it. Accordingly, they entered into a "master lease agreement" with Lease Finance for lease of the 12-pound machine and various other equipment effective October 25. Pursuant to that agreement, the Burgers were to pay $419 per month for a period of 36 months, commencing on that date. Cowell Sales forwarded an invoice to Lease Finance for the machine and on November 2, Cowell Sales received a check from Lease Finance in payment and endorsed the check to the Burgers.
During the summer of 1973, the Burgers encountered numerous problems in operating the 12-pound machine. Various attempts by Cowell Sales and the manufacturer to cause the machine to operate properly were unsuccessful.
Frustrated by the performance of the machine, the Burgers returned it to Cowell Sales. Cowell Sales agreed to return the 12-pound machine to the manufacturer's representative on behalf of the Burgers and *859 apply the amount received as credit on a new 18-pound machine which Cowell Sales contracted to sell the Burgers for a new laundromat which the Burgers wanted to establish in Snowbridge. Lease Finance conditionally approved the sale subject to the 18-pound machine being substituted for the 12-pound machine as collateral on a new lease agreement. Contemporaneous with the exchange agreement, the Burgers agreed to purchase from Cowell Sales numerous items in addition to the 18-pound machine for their proposed Snowbridge laundromat. Apparently it was contemplated that Lease Finance would pay Cowell Sales in the same manner as it had purchased the 12-pound machine. Cowell Sales returned the 12-pound machine to the manufacturer and received a credit of about $7,000.
Later the Burgers refused to consummate the contract relating to the 18-pound machine, claiming that in subsequent oral discussions Cowell Sales had agreed to condition the sale of all the equipment on their acquisition of a lease in a particular building in Snowbridge and that the lease was not obtained. Cowell Sales resold the 18-pound machine to a third party.
Following a trial to the court, it concluded that Cowell Sales and the Burgers had "unintentionally" converted the 12-pound machine and awarded a joint judgment against them in favor of Lease Finance in the amount of $6,965 plus interest. The court further concluded that the Burgers must indemnify Cowell Sales for those amounts. The trial court also entered judgment in favor of Lease Finance in the amount of $8,556.64 on its claim that the Burgers had breached the lease agreement.
As to Cowell Sales' claim against the Burgers, the trial court awarded lost profits to Cowell Sales for the Burgers' nonacceptance of the 18-pound machine and the Snowbridge equipment in the amount of $7,716.75, together with incidental damages in the amount of $1,888.78 and attorneys fees in the amount of $3,563.25. Judgment was also awarded in favor of Cowell Sales on an amount admittedly owed by the Burgers for certain purchases totalling $1,118.66. As to the Burgers' claim against Cowell Sales, the trial court ruled that the purchase contract between the Burgers and Cowell Sales excluded all warranties. The trial court also ruled that evidence of the oral agreement between the Burgers and Cowell Sales relating to the Snowbridge sale was not admissible under the parol evidence rule.

I. Cowell Sales' Appeal

A. Legal Effect of the Lease
Cowell Sales first contends that the master lease agreement between Lease Finance and the Burgers was in fact a conditional sales contract, that Cowell Sales was a "buyer in ordinary course of business," pursuant to § 4-9-307, C.R.S.1973, and that, therefore, it could not have converted the 12-pound machine since it took free of the Lease Finance security interest. See § 4-9-307(1), C.R.S.1973. However, we affirm the trial court's conclusion that the transaction between Lease Finance and the Burgers constitutes a lease.
Whether a transaction is characterized as a lease or sale is not conclusive, but rather it is the intention of the parties which is controlling, that intention to be determined by the facts of each case. See § 4-1-201(37), C.R.S.1973. Thus, "any transaction (regardless of its form) which is intended to create a security interest" will be subject to article 9 of the U.C.C. Section 4-9-102, C.R.S.1973. However, the intention of the parties can only be gleaned circumstantially.
Indicative factors may include: (1) Whether the lessee is given an option to purchase the equipment, and, if so, whether the option price is nominal, see § 4-1-201(37), C.R.S.1973; (2) whether the lessee acquires any equity in the equipment, see Crest Investment Trust, Inc. v. Atlantic-Mobile Corp., 252 Md. 286, 250 A.2d 246 (1969); (3) whether the lessee is required to bear the entire risk of the loss; or (4) pay all charges and taxes imposed on ownership; (5) whether there is a provision for *860 acceleration of rental payments; (6) whether the property was purchased specifically for lease to this lessee, see Leasing Service Corp. v. American National Bank & Trust, 19 U.C.C.Rptr. 252 (D.N.J. April 23, 1976); and (7) whether the warranties of merchantability and fitness for a particular purpose are specifically excluded by the lease agreement. WOCO v. Benjamin Franklin Corp., 20 U.C.C.Rptr. 1015 (D.N.H. December 22, 1976).
Under the foregoing criteria, we recognize that the master lease agreement does contain some attributes of an installment sales contract. The lessee is required to bear the entire risk of loss and to pay all taxes imposed on the equipment. The agreement does contain a provision for acceleration of rental payments in the event of default, and does purport specifically to exclude the warranties of merchantability and fitness, and the equipment was purchased specifically for the Burgers' use. However, the fact that the written agreement did not grant the Burgers an option to purchase the equipment and other evidence that both parties apparently intended the transaction to be a lease, support the trial court's determination on this issue. See Allen v. Cohen, 310 F.2d 312 (2d Cir. 1962).
Our holding makes it unnecessary for us to consider Cowell Sales' argument that it was a "buyer in ordinary course of business."

B. Waiver, Estoppel
Cowell Sales next contends that Lease Finance waived its claim of ownership in the 12-pound dry cleaner when it conditionally agreed to exchange the 12-pound machine for an 18-pound machine subject to its being included on a new lease agreement identical to the master lease agreement. Further, Cowell Sales contends that by its action, Lease Finance should be estopped from asserting that the 12-pound machine was sold without its permission.
While both issues were raised by Cowell Sales in its opening statement and in the motion for new trial, see Great American Insurance Co. v. Ferndale Development Co., 185 Colo. 252, 523 P.2d 979 (1974), the trial court failed to address these issues in its findings of fact and conclusions of law. Moreover, since certain of the evidence is in conflict as to Lease Finance's action following the Burgers' initial decision to purchase the 18-pound machine, we may not resolve these issues on appeal. Hence, the case must be remanded to the trial court for resolution of these issues.

C. Conversion Damages
Cowell Sales also contends that the evidence was insufficient to support the amount of damages awarded by the trial court and that it applied the wrong measure of damages under the facts of this case. However, we do not address these issues since the case must be remanded for resolution of other issues pertaining to Cowell Sales' liability.

II. The Burgers' Appeal Against Cowell Sales

A. Warranties
In their first claim against Cowell Sales, the Burgers alleged that Cowell Sales breached its implied warranties of merchantability and of fitness for a particular purpose with respect to the 12-pound dry cleaning machine. That claim was based upon the March 1, 1972, sale of the machine to the Burgers by Cowell Sales. In the sales contract Cowell Sales attempted to exclude the implied warranties. The trial court ruled that the warranties were effectively excluded thereby, and the Burgers argue that this ruling was erroneous alleging that the exclusion paragraph of the contract failed to comply with the requirements of § 4-2-316, C.R.S.1973. However, we do not reach the merits of this issue because at least as of November 2, 1972, when Lease Finance purchased the 12-pound machine from Cowell Sales, and Cowell Sales endorsed Lease Finance's check to the Burgers, the Burgers were no longer owners of the machine, but instead were lessees of Lease Finance. For the same reason, we do not address the trial court's *861 further finding that the Burgers did not "repudiate" the contract with Cowell Sales within a reasonable time. Any breach of warranty claim that the Burgers rely on must rest upon their position as lessees.
Warranties of merchantability and of fitness for a particular purpose (assuming all other statutory prerequisites have been met), arise in every contract for sale, unless properly excluded. See §§ 4-2-314, 4-2-315, and 4-2-316, C.R.S.1973. Although a lessee of a machine, such as the Burgers, does not directly receive the benefits of the warranties made by the seller to the lessor, see §§ 4-2-103(1)(a) and (d), 4-2-313, 4-2-314, and 2-4-315, C.R.S.1973, the lessee may be a third-party beneficiary of such warranties who could "reasonably be expected to use, consume, or be affected by the goods." Section 4-2-318, C.R.S.1973.
Since the cause must be remanded for further proceedings by the trial court on other issues raised on this appeal, it should also make findings as to whether implied warranties were present in the sale between Cowell Sales and Lease Finance, whether the Burgers are a third party beneficiary of the warranty, and, if so, whether the warranties were excluded in some manner or whether the Burgers have demonstrated a breach of warranty sufficient to entitle them to relief.

B. Indemnification
The Burgers next contend that the trial court erred in holding that Cowell Sales was entitled to indemnification from them for the value of the converted 12-pound dry cleaning machine. However, we decline to address that issue because issues relating to Cowell Sales' liability have yet to be determined.

C. Parol Evidence
The Burgers contend that the trial court erred in excluding certain testimony relative to the agreement to buy equipment for the proposed Snowbridge laundromat including the 18-pound machine. We agree.
By offer of proof, the Burgers offered to establish a subsequent parol agreement between them and Cowell Sales which provided that the contractual obligations between the parties relative to the 18-pound machine would be rescinded if certain conditions as to the cost of a new building to be leased by the Burgers for the Snowbridge laundromat were not met, and that those conditions, in fact, were not met. The trial court rejected the offer of proof as violative of the parol evidence rule. The record also reflects that the 18-pound machine was sold by Cowell Sales to a third party shortly after it was delivered to Cowell Sales.
Insofar as applicable here, § 4-2-202, C.R.S.1973, provides that the terms of a written sales contract which are
"intended by the parties as a final expression of their agreement with respect to such terms as are included therein. . . may be explained or supplemented. . . [b]y evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."
In support of the trial court's ruling, Cowell Sales contends that the Snowbridge contract was intended as the exclusive statement of the terms of the parties' agreement because it provides that "the conditions of sale . . . constitutes the entire agreement and no representation of the seller has the power to alter same." Cowell Sales also asserts that the modification which the Burgers seek to prove would violate the statute of frauds provision of the U.C.C., § 4-2-201, C.R.S.1973. However, § 4-2-209, C.R.S.1973, provides in pertinent part:
"(3) The requirements of the statute of frauds section of this article (section 4-2-201) must be satisfied if the contract as modified is within its provisions.
"(4) Although an attempt at modification or rescission does not satisfy the requirements of subsection . . . (3) of this section, it can operate as a waiver.
"(5) A party who has made a waiver affecting the executory portion of the *862 contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver."
The term "waiver" as used in the foregoing section has been accorded its usual meaning, namely, the intentional relinquishment of a known right. Farmers Elevator Co. v. Anderson, Mont., 552 P.2d 63 (1976). A waiver may be shown by a course of conduct, see Farmers Elevator Co. v. Anderson, supra, or by oral statement. See Double-E Sportswear Corp. v. Girard Trust Bank, 488 F.2d 292 (3rd Cir. 1973). Thus, the evidence offered by the Burgers was admissible to show a waiver by Cowell Sales of the executory provisions of the sales contract, and the trial court must address this issue on remand.

D. Account Stated
Next the Burgers contend that the trial court improperly rejected its defense of account stated based upon evidence that Cowell Sales only claimed approximately $800 due as reflected by its statement to the Burgers.
To constitute an "account stated" there must have been an agreement between the parties as to the amount due and owing by the Burgers. Mace v. Spaulding, 110 Colo. 58, 130 P.2d 89 (1942); Conyers v. Lee, 32 Colo.App. 337, 511 P.2d 506 (1973). While this issue was raised by the Burgers as an affirmative defense and renewed as a contention in their motion for new trial, the trial court failed in its findings of fact and conclusions of law to address this issue specifically, and thus we are unable to review the Burgers' contentions. Upon remand, the trial court is directed to address this issue.

E. Damages
The Burgers also contend that the trial court erred in awarding Cowell Sales lost profits on resale of the 18-pound machine, consequential damages, and attorneys fees. However, we do not address these contentions since the trial court must consider additional issues relating to the Burgers' liability.
The provision of the judgment determining that the transaction between Lease Finance and the Burgers constituted a lease is affirmed. The balance of the judgment is reversed and the cause remanded with directions for additional proceedings consistent with the views expressed in this opinion.
SILVERSTEIN, C. J., and PIERCE, J., concur.