H.M.O. SYSTEMS, INC., a Colorado corporation, Plaintiff-Appellant and Cross-Appellee,

v.

CHOICECARE HEALTH SERVICES, INC., a Colorado corporation, Defendant-Appellee and Cross-Appellant.

CHOICECARE HEALTH SERVICES, INC., a Colorado corporation, Plaintiff-Appellee and Cross-Appellant,

v.

F. Parker FOWLER, Jr., individually and d/b/a Systems Search, Defendant-Appellant and Cross-Appellee.

J. Richard BARNES, Commissioner of Insurance of the State of Colorado, Plaintiff-Appellee,

v.

CHOICECARE HEALTH SERVICES, INC., a Colorado corporation, Defendant-Appellee,

and

H.M.O. Systems, Inc., a Colorado corporation, and F. Parker Fowler, Jr., individually, Claimant-Appellant.

Nos. 81CA1036–81CA1038.

Colorado Court of Appeals, Division 1.

March 3, 1983.

Rehearing Denied March 31, 1983.

Banta, Hoyt, Banta, Greene, Hannen & Everall, J. Mark Hannen, Englewood, G. William Beardslee, Fort Collins, for H.M.O. Systems, Inc., and F. Parker Fowler, Jr.

Arthur P. Roy, Greeley, for Choicecare Health Services, Inc., and J. Richard Barnes.

STERNBERG, Judge.

Plaintiff H.M.O. Systems, Inc., sued defendant Choicecare Health Services, Inc., for damages, alleging breach of a lease and of a contract. Following trial to the court, judgment entered for HMO and damages

were awarded for breach of the contract, but not of the lease. HMO appeals the court's finding that it is not entitled to damages under the lease, and both parties appeal the amount of damages awarded for breach of contract. Choicecare had been placed in receivership in a related action consolidated with this appeal, and HMO also appeals the priority of its damages claim as designated by the receiver. We affirm in part and reverse in part.

The subject of the law suit was two separate contracts entered into in February 1977 between Choicecare and HMO and its predecessors. The first contract, the "Master Equipment Lease," provided that Choicecare was to lease certain computer hardware for a term of 48 months. It contained an option to purchase. HMO had originally purchased the equipment from Hewlett-Packard, and Choicecare's monthly rental payments to HMO were equal to the monthly payment on the promissory note executed by HMO to United Bank of Fort Collins to finance the purchase. Choicecare deposited the lease payments directly to an account from which the United Bank automatically collected its payments. The option price was designated as the remaining balance of the lease payments. The lease also made Choicecare responsible for maintenance costs, taxes, risk of loss, and all warranties were disclaimed.

The lease included the following remedies upon default: repossession of the equipment, and forfeiture of all lease payments, plus liquidated damages, specified as the entire balance of lease payments plus interest.

Contemporaneously with this lease, the parties entered into another agreement whereby Choicecare agreed to pay $15,000 for a non-expiring license to use a computer software system developed by HMO expressly for Choicecare's claims processing needs. In consideration of Choicecare's initial involvement and investment in the system, and its agreement to make office space and the computer available to HMO to assist in marketing it to other health mainte-

nance organizations, Choicecare was to receive a royalty for each system sold.

Choicecare became insolvent and was placed into receivership by the Insurance Commissioner in January 1980. As a result of its insolvency, Choicecare failed to make the January lease payment, whereupon HMO declared a default and attempted to repossess the equipment. In March of that year, the receivership resumed the lease payments and attempted to exercise the option to purchase the equipment.

HMO filed suit under the lease seeking return of the equipment, liquidated damages, and attorney fees. HMO also sought damages for breach of Choicecare's contract to provide a demonstration model for the computer equipment and software. Choicecare counterclaimed for royalties due under the contract.

The trial court found that Choicecare retained the right to exercise its purchase option as a form of redemption and denied HMO's claim under the liquidated damages clause, finding that payment of the debt by exercise of the option to purchase avoided any basis for liquidated damages. The court found a breach of the second agreement in Choicecare's inability to provide a demonstration model for future sales, and fixed the amount of damages at $85,000. This amount was subject to set off in the amount of $4,000 for royalties owing at the time of default.

Both parties requested that the court amend its findings and judgment, alleging they did not comply with C.R.C.P. 52(a) in that they were not sufficiently detailed to determine the theory for the award or measure of damages. This request was denied.

## I.

On appeal HMO argues the trial court erred in not applying the default provisions of the lease agreement according to their terms, which would have given it repossession of the equipment or its market value and liquidated damages. We disagree.

■ Any transaction, regardless of its form, which is intended to create a security interest is subject to Article 9 of the Uniform Commercial Code. *Lease Finance, Inc. v. Burger,* 40 Colo.App. 107, 575 P.2d 857 (1977); § 4–9–102, C.R.S.1973. Whether a transaction is characterized as a lease or sale is not controlling, but rather it is the intention of the parties which is controlling, that intention to be determined by the facts of each case. *Lease Finance, Inc., supra; see* § 4–1–201(37), C.R.S.1973. In *Lease Finance, Inc., supra,* the factors examined to determine the character of a transaction included:

"(1) Whether the lessee is given an option to purchase the equipment, and, if so, whether the option price is nominal ... (2) whether the lessee acquires any equity in the equipment ... (3) whether the lessee is required to bear the entire risk of the loss; or (4) pay all charges and taxes imposed on ownership; (5) whether there is a provision for acceleration of rental payments; (6) whether the property was purchased specifically for lease to this lessee ... and (7) whether the warranties of merchantability and fitness for a particular purpose are specifically excluded by the lease agreement."

■ That each of these factors is contained in this master lease agreement leads to the conclusion it was in fact a security agreement. Although the option price was not nominal, it was below the fair market value of the equipment. This fact, and the fact that the price corresponded to the balance due under the note given to United Bank, diminishing as rental payments were made, is indicative of an intent to give Choicecare equity in the property. *Aoki v. Shepherd Machinery Co.,* 665 F.2d 941 (9th Cir.1982). Thus, the transaction is subject to Article 9 of the Uniform Commercial Code. Accordingly, under § 4–9–506, C.R.S.1973, the debtor, Choicecare, acquired the right to redeem the equipment at any time before HMO disposed of it. And, Choicecare exercised this right by bringing the payments to date and paying the remaining amount due on the note.

■ The trial court's remedy recognized the equitable interest in the property that § 4–9–506, C.R.S.1973, was designed to protect. Although it couched its ruling in pre-U.C.C. language, the court's treatment of the matter is consistent with the principles of Article 9, and therefore, we affirm those findings and conclusions. *See Klipfel v. Neill,* 30 Colo.App. 428, 494 P.2d 115 (1972).

## II.

HMO also asserts error in the trial court's denial of its request for liquidated damages. We affirm the trial court.

Payment of the option price and the consequent release of HMO's note to United Bank, plus Choicecare's substantial improvement to the property at its own expense, were the bases for denying liquidated damages.

■ A liquidated damages clause is unenforceable if it is in the nature of a penalty, and whether such is the case is determined by whether the parties intended to liquidate damages; whether the amount of liquidated damages, when viewed from the time of contracting, was a reasonable estimate of the presumed actual damages that a breach would cause; and whether it was difficult to determine the amount of actual damages that would result when viewed from the time of contracting. *O'Hara Group Denver, Ltd. v. Marcor Housing Systems, Inc.,* 197 Colo. 530, 595 P.2d 679 (1979).

■ Here, the liquidated damages clause gave HMO the amount outstanding on the loan plus ten percent interest. The default clause also provided for repossession and/or resale of the equipment with all proceeds accruing to HMO. Looking at these provisions from the time the transaction was entered into, we note that HMO would have received the proceeds of sale, all payments previously made under the lease, and the outstanding balance of the note executed to United Bank plus ten percent. Hence, its enforcement would have resulted in an unconscionable forfeiture, and it was therefore unenforceable. *Oldis v. Grosse-Rhode,* 35 Colo.App. 46, 528 P.2d 944 (1974).

■ The trial court reached the same result although not on these grounds. A correct judgment will not be disturbed on review even if the reason for the decision was wrong. *Silverstein v. Sisters of Charity,* 43 Colo.App. 446, 614 P.2d 891 (1979).

### III.

The trial court found that the software contract was breached by Choicecare's insolvency. Both parties assert error in the award of damages; HMO arguing the amount was insufficient, and Choicecare arguing damages were not proven. Both parties also argue the findings and conclusions were insufficient under C.R.C.P. 52(a).

In its amended findings, the court concluded that the amount of damages the non-defaulting party should receive is the reasonable expenditures made in anticipation of performance plus any reasonable, non-speculative profits the non-defaulting party would have received had the contract been performed. We disagree.

Several theories of compensation were advanced by HMO. The underlying argument is that the contract price was established in expectation of continued access to the computer. Using this rationale, HMO requested the difference between the contract price of the software license and the fair rental value of a similar package on a time-share basis; the difference between the cost incurred to develop the program and the contract price; and the lost profits resulting from its inability to demonstrate the program on Choicecare's equipment. We conclude that, subject to the court's findings on lost profits, the only award HMO is entitled to is the loss in value to it of the Choicecare performance.

■ The measure of damages for breach of contract is that sum which places the non-defaulting party in the position that party would have enjoyed had the breach not occurred. *Kniffin v. Colorado Western Development Co.,* 622 P.2d 586 (Colo.App.1980). Lost profits are not awarded unless the loss resulted from the breach. *Cope v. Vermeer Sales & Service of Colorado, Inc.,* 650 P.2d 1307 (Colo.App.

1982). And, if recovery also includes reasonable expenditures in preparation for performance or in performance, this amount is limited by the contract price. *Restatement (Second) of Contracts* § 349, comment a.

■ The ambiguity in the court's findings of fact, and the evidentiary rulings at trial, make it unclear whether the court found a causal relationship between the lost profits alleged and the breach, although it appears this may have been part of the basis for the award. Recovery under the theory of breach of contract requires that a causal relationship exist and that compensation for these damages were within the contemplation of the parties. *Cope v. Vermeer Sales & Service of Colorado, Inc., supra.* This is a matter to be determined by the trier of fact. *R.F. Carle Co. v. Biological Sciences Curriculum Study Co.,* 616 P.2d 989 (Colo.App.1980). Accordingly, we remand for more specific findings on this issue.

■ We reject HMO's contention that it should recover for the market rental value of the computer software received by Choicecare. The contract unambiguously states the total price for the services and all of the other obligations of the parties, and HMO will not be allowed to introduce extrinsic evidence of other considerations which contradict the terms of the agreement. *Buckley Bros. Motors, Inc. v. Gran Prix Imports, Inc.,* 633 P.2d 1081 (Colo. 1981). As a related argument, HMO seeks recovery for the fair rental value of the software to compensate for its use during receivership. Choicecare acquired a non-expiring license to use the software for a lump sum payment, and for the reasons discussed above, this agreement will not be altered.

HMO cannot recover separately any loss based on its developmental costs, for to the extent these costs exceeded the contract price of $15,000, it would have sustained such loss even had the contract been fully performed. *See Restatement (Second) of Contracts* § 349, comment a. Any allow-

ance of recovery based on developmental costs was therefore error.

To put HMO in the position it would have occupied had the breach not occurred, it should be compensated for loss of access to Choicecare's computer for the period between the breach and the expiration of the contract. The general measure of damages, therefore, is the loss in value to HMO of access to the computer. *Kniffin v. Colorado Western Development Co., supra.* Any cost HMO avoided by not having to complete its own performance should be subtracted from this figure. *Restatement (Second) of Contracts* § 347.

### IV.

Lastly, HMO argues that the judgment awarded should not have been classified a Class IV claim under § 10–3–507(3), C.R.S.1973 (1982 Cum.Supp.). Instead, it argues, because the equipment was not owned by Choicecare, it should have been awarded the fair market value of the equipment, which is not subject to classification under § 10–3–507(3), C.R.S.1973 (1982 Cum. Supp.). We disagree.

The court properly found that HMO did not have an ownership interest in the equipment. Whatever money judgment is ultimately entered, it will fall within § 10–3–507(3)(d), C.R.S.1973 (1982 Cum.Supp.).

The judgment placing title to the computer hardware in Choicecare under the lease and denying liquidated damages, repossession, or an award for its fair market value is affirmed. The judgment awarding damages for breach of the software contract is reversed, and the cause is remanded for specific findings on the causal relationship between the breach of contract and alleged loss of profits, and for a hearing to determine the amount which it would have cost HMO to obtain access to comparable equipment for the duration of the contract and to determine the amount of attorney fees, if any, to be awarded under § 4–9–506, C.R.S.1973.

COYTE and BERMAN, JJ., concur.