In re UNION SQUARE DEVELOP-
MENT CO., a Colorado general
partnership, Debtor.

GLOBAL, INC., Plaintiff–Appellant,

v.

Harvey SENDER, Trustee,
Defendant–Appellee.

No. 90–K–1405.
Bankruptcy No. 85–B–5179 G.
Adv. No. 89–A–1468.

United States District Court,
D. Colorado.

May 22, 1992.

J. Thomas Macdonald, Otten, Johnson, Robinson, Neff & Ragonetti, Denver, Colo., Daniel J. Furniss, Khourie, Crew & Jaeger, San Francisco, Cal., for plaintiff-appellant.

Erik K. Foster, Moye, Giles, O'Keefe, Verveire & Gorrell, Denver, Colo., for defendant-appellee.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

This is an appeal from an order of the bankruptcy court denying Global, Inc.'s ("Global") attempts to recover $68,000 it paid to Harvey Sender ("trustee") in order to obtain the trustee's release of a deed of trust needed to complete the sale of a shopping center in Reno, Nevada. I have jurisdiction under 28 U.S.C. § 158(a). The deed of trust secured a promissory note ("note") Global executed in 1988 in connection with a settlement agreement ("agreement") the trustee made with Global and certain other parties. Global seeks reversal of the bankruptcy court's ruling for three reasons.

First, it asserts that the court wrongly ruled that $56,000 the trustee collected as a late fee under the note was a proper and enforceable liquidated damages provision under Colorado law rather than a penalty. Second, Global claims the bankruptcy court wrongly interpreted the agreement's forum

selection clause to exclude a receivership action for the shopping center and thus improperly awarding the trustee $12,000 in attorney fees for a Nevada state court receivership action. Third, Global claims the court wrongly assessed additional attorney fees as a cost of collection under the promissory note the trustee incurred in defending the adversary proceeding below. For the reasons discussed below, I affirm the bankruptcy court's decision as to the $56,000 late fee and reverse it as to the $12,000 awarded for the receivership. I also reverse the award of attorney fees in the adversary proceeding as well.

## I. *Facts and Procedural History*

On May 23, 1988 the trustee, Global and certain other parties not before this court entered into a settlement agreement. The litigation and ensuing settlement arose out of allegations that one of the debtors, August Waegemann, had transferred prepetition millions of dollars of assets to a variety of offshore trusts and corporations, including Global. The agreement settled three adversary proceedings the trustee had brought against Global and the other entities. It required Global to execute and deliver to the trustee a promissory note in the principal amount of $1,400,000. A deed of trust on real property commonly known as Raley's Shopping Center in Reno, Nevada primarily secured the note. Global held a 78% interest in the property. The note bore interest at prime rate until maturity at the then-prevailing prime rate and at prime plus 3% thereafter. The Denver Bankruptcy Court approved the settlement.

This appeal partly focuses on paragraph five of the promissory note, which provides as follows:

> If any payment due hereunder is delinquent fifteen (15) or more days, the Maker agrees to pay a late charge in the amount of four percent (4%) of the payment so due and unpaid, in addition to the payment....

It also focuses on certain fee provisions and forum selection clauses in the agreement, note and deed of trust. In paragraph nine of the note Global promised to pay "all costs and expenses of collection and reasonable attorney fees incurred by the trustee on account of such collection." Paragraph twelve of the note required Global to consent to "application of Colorado law for the interpretation of [the note and deed of trust], and to the jurisdiction of the United States Bankruptcy Court for the District of Colorado as the forum court...." Paragraph A.(3) of the deed of trust required Global

> [t]o appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear....

Paragraph III.B(7) of the settlement agreement specifically authorized the trustee "to initiate judicial or non-judicial foreclosure proceedings against Raley's Shopping Center in accordance with Nevada law." Paragraph II.C.(23) provides as follows:

> The Colorado Bankruptcy Court shall retain jurisdiction herein and shall be the sole and exclusive forum for the determination of any and all disputes arising from or relating to the terms of this agreement.

Finally, paragraph III.C(8) of the settlement agreement made the Colorado Bankruptcy Court "the sole and exclusive forum for objecting to or complaining about any action brought by the Trustee involving Raley's Shopping Center."

Global made regular monthly payments under the note through November 30, 1988, but was unable to make the final balloon payment due December 31, 1988. On February 1, 1989, the trustee initiated nonjudicial foreclosure proceedings in Washoe County, Nevada state court. It scheduled a foreclosure sale of the shopping center for June 12, 1989.

The trustee also filed a complaint on March 31, 1989, in the Washoe County district court for appointment of a receiver to receive and collect rents. The trustee did so, according to his testimony, because he feared that Global would not allocate rent

receipts to the property and instead would disperse them overseas. Both the trustee and Global attended the initial receivership hearing on May 18, 1989. The district court deferred ruling until June 2, 1989, one day after a scheduled sale and closing on the shopping center, apparently on the theory that a completed sale would moot the need for a receiver. The closing, however, was delayed by one day, until the afternoon of June 2, 1989. Hence, the district court appointed a receiver on June 2, 1989, but stayed the appointment until June 5, 1989.

At the closing the trustee collected, upon his demand, $1,400,000, the principal balance of the note; $96,152.81, accrued interest at prime rate plus 3%; $7,323.10, for title fees and foreclosure costs; $56,000, for a 4% late charge under paragraph five of the note; and $16,000 for attorney fees and costs.[1] Global disputed both the late fee and $16,000 in fees and costs at the time of closing, but the trustee was unrelenting in his demand. To protect its closing, Global paid the disputed amounts from escrow and then initiated the adversary proceeding below to recover the $68,000.

Trial was held on July 30, 1990. Only the trustee testified at the trial, primarily about his perception of the uncertainty of damages under the late fee provision of the contract. He testified to four general areas of uncertainty with regard to damages. First, Global's default would cause the underlying bankruptcy case to remain open until the trustee received payment on the note, thereby incrementally increasing the estate's administrative expense. Second, since cash disbursements to the estate's major creditors would also likely be delayed by a Global default, those same creditors would be likely to demand additional compensation from Global in amounts uncertain at the time of contract. Third, upon default, the estate might have to elect to acquire Global's 78% interest in the shopping center causing additional expenses for maintenance, repairs and administration. Such expenses could have been significant or not, in part depending upon when during the year the trustee was able to acquire Global's interest. The shopping center ran a negative balance throughout most of the year, except in February when the major tenant made a $400,000 rental payment. Thus, acquisition of the shopping center in July would entail greater carrying expenses then would acquisition in January. Fourth, the trustee testified that title to the shopping center was riddled with unrecorded deeds and other potential defects, thus increasing the risk to the estate upon Global's default.

The bankruptcy court ruled against Global on both issues. It found both that the 4% late charge was not a penalty under Colorado law, and that the trustee acted properly in filing the state receivership action in Nevada state court. Finally, it awarded the trustee an additional $7,997.97 to compensate him for attorney fees incurred in defending the adversary proceeding. It ruled that Global began the adversary proceeding "on account of" the trustee's collection activities, thereby triggering paragraph nine of the promissory note. This appeal followed.

## II. *Standard of Review*

The bankruptcy court's conclusions of law are subject to *de novo* review. *Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1377 (9th Cir.1985). Its mixed determinations of fact and law are also subject to de novo review as are its interpretations of the settlement agreement and related documents. *In re Golf Course Builders Leasing, Inc.*, 768 F.2d 1167, 1169 (10th Cir. 1985). Although the trustee disputes the point, I agree with Global that the bankruptcy court's determination of the liquidated damages issue is also subject to de novo review.

## III. *Discussion*

### A. The Disputed Late Fee

The settlement agreement and promissory note require me to look to Colorado law to determine whether the $56,000 late fee charge is properly enforceable as a liquidated damages provision or unenforce-

---

1. Of this last amount, Global disputes only fees and cost of $12,000.

able on public policy grounds as a penalty. The general rule is that

> in the case of a contract for the payment of money, a covenant to pay a fixed sum greatly in excess of the interest accruing during a period of default in payment will be regarded as an agreement for a penalty, and not as one for liquidated damages, and is therefore unenforceable.

*Resolution Trust Corp. v. Avon Center Holdings, Inc.,* 832 P.2d 1073 (Colo.Ct.App. 1992). The parties agree that I should apply the three-part test developed in *Perino v. Jarvis,* 135 Colo. 393, 312 P.2d 108 (1957). The *Perino* court held that three elements must exist for a valid liquidated damages provision: (1) the parties must intend to liquidate the damages in advance; (2) the damages must be uncertain or difficult to prove; (3) the amount stated must be reasonable and not greatly disproportionate to the presumable loss or injury. *Perino,* 312 P.2d at 109. A liquidated damages provision in a contract not meeting this test is deemed a penalty and is unenforceable. *H.M.O. Systems v. Choicecare Health Services,* 665 P.2d 635 (Colo.Ct.App. 1983). The Colorado Court of Appeals has recently suggested that the *Perino* rule does not apply in the "context of [a] compromised, voluntarily executed and judicially approved settlement of a previously breached contract...." *RTC v. Avon,* 832 P.2d at 1075. Global does not press the intent element of the *Perino* test on appeal. Thus, only the uncertainty of the damages and the reasonableness of the amount are in dispute.

### 1. *Uncertainty of Damages*

■ Global claims the bankruptcy court went astray when it failed to distinguish between uncertainty of damages and uncertainty of collection. It argues that the potential damages were completely clear and easily measured by the time value of money. I disagree. As the Colorado Supreme Court has noted in another liquidated damages case, "[i]t is the difficulty in ascertaining damages at the time of the contract, not afterwards, that is relevant for purposes of enforcing a liquidated dam-

ages provision." *Rohauer v. Little,* 736 P.2d 403, 410 (Colo.1987). At the time the trustee signed the settlement agreement with Global, the amount of the estate's damages in the event of default were clearly uncertain. I see such uncertainty in the demands of major creditors not paid timely seeking additional compensation, and in the additional administrative expense the estate would incur in remaining open upon Global's default. The greatest uncertainty, however, lay in the potentially huge expense the trustee would have incurred had it been forced to acquire Global's interest in the shopping center. The monthly income was exceedingly sporadic, with the bulk of the rent coming in February, and only small amounts in all other months. Thus, acquisition not immediately before February could have been a significant drain on the estate's resources. I conclude that the liquidated damages provision properly reflected the uncertainty of damages at the time of the signing of the settlement agreement.

### 2. *Reasonableness of the Amount*

■ Under the third *Perino* prong, I must decide whether the 4% liquidated damages provision is reasonable and proportionate to the presumed loss or injury. The trustee argues that the effective annual interest rate was no more than 20%, even when calculated from August 8, 1988, when interest began to accrue at prime rate. He asserts that in comparison to other cases both in Colorado and nationwide, such an annualized yield is not excessive. He also argues that a 20% yield is not illegal under the Colorado usury statute. Colo.Rev.Stat. § 18–15–104(1) (1986).

Global argues that the 4% fee was excessive and disproportionate to the damages because it was required both to render performance and to pay the late fee under paragraph five of the promissory note. Under any other circumstances, I would agree. Here, however, I am dealing with a situation indistinguishable from that in *RTC v. Avon.* There, the court of appeals refused to overturn a 3.7 million dollar penalty on a principal amount of only two

million dollars. The court reasoned that "in a contract of accord for breach of previously broken contract, the parties may agree on what terms of settlement they will, however unfavorable (short of unconscionability) the accord may be to the party in default." *RTC v. Avon,* 832 P.2d at 1075, *citing* 5 S. Williston, *Contracts* § 780 (3d ed. 1961). The only distinction I can see between the present case and *RTC v. Avon* is that the settlement agreement here did not arise from a previously breached agreement. Rather, it developed out of the trustee's litigation efforts in the underlying adversary proceedings. This should not make a difference. In each case, the parties negotiated as equals to reach a judicially approved settlement each thought was fair and appropriate under the circumstances. The $56,000 payment bears a reasonable relationship to the amount the parties thought might be sustained if the litigation had continued. Thus, as the court of appeals put it, I decline "to make a more favorable contract for [Global] than [it] made for [itself]." *RTC v. Avon,* 832 P.2d at 1075.

**B. Attorney's fees for the Receivership**

■ Global admits that under paragraph nine of the promissory note it is liable for reasonable fees and costs the trustee incurred in his collection efforts. It asserts, however, that the $12,000 the trustee spent in the receivership action were unreasonable because the action brought little benefit to the estate and because the trustee filed the action in the Nevada state court in violation of the forum selection clause.

The trustee claims first that the agreement and deed of trust explicitly authorize him to seek a receivership. Second, he says that the settlement agreement's forum selection clause only applies to disputes that arise from or relate to the *terms* of the settlement agreement. Since Global concedes that the trustee had a right under the deed of trust to seek a receiver, the trustee says there is thus no dispute about the *interpretation* of a term of the settlement agreement. I disagree and find the

trustee's view of the forum selection clause exceedingly narrow.

At a minimum, the parties disputed the construction and interpretation of paragraph III.C(23). In Global's view, the propriety of the receivership and the concomitant fees was a dispute arising from the settlement agreement. It understood the phrase "arising from" to stand with "this agreement" rather than with "the terms of this agreement." The trustee viewed it as a simple dispute about claims and not a dispute about the *terms* of the settlement agreement. Such a difference should have first been presented to the bankruptcy court. This is so even if, as the trustee argues, the bankruptcy court would not have had jurisdiction to appoint a receiver for the shopping center. Once the trustee committed to resolve disputes in the bankruptcy court and explicitly bound Global to that forum if it wished to contest any of his actions, fairness requires that the trustee likewise look first to the bankruptcy court for guidance. In my view, paragraph III. C(23) is just as susceptible to Global's interpretation as it is to the trustee's. The trustee, however, insisted on his own interpretation of the forum selection clause. He did so at his own peril. I accordingly reverse the award of fees and costs to the trustee in the amount of $12,000.

**C. Attorney's Fees in the Adversary Proceeding**

■ Global asserts that the bankruptcy court improperly awarded the trustee approximately $7,900 in fees and costs that he incurred in defending the adversary proceeding. It asserts that the fees and costs were not "on account of collection" within the meaning of paragraph nine of the note. It claims that since the trustee had already collected the note, no further fees or costs could be properly assessed.

The trustee asserts that the adversary proceeding was nothing more than an extension of the state court collection proceeding. Since it is akin, in the trustee's view, to an appeal, he claims he should be reimbursed for the fees and costs in the adversary proceeding and in this appeal. He also asserts that paragraph A.(3) of the

**550**

deed of trust permits him to collect fees and costs in the adversary proceeding and this appeal. Again, I disagree.

To interpret Global's adversary proceeding as just another collection action stretches the meaning of the words beyond their normal elasticity. Here, the parties specifically agreed they would resolve disputes about the settlement agreement in the bankruptcy court in Denver. Further, Global was *forbidden* by paragraph III. C(8) of the settlement agreement to object or complain about any action by the trustee except in the Colorado bankruptcy court. In the absence of an express provision requiring Global to pay the trustee's fees and expenses in the course of such an objection, the bankruptcy court's interpretation of the settlement was wrong as a matter of law. Likewise, the adversary proceeding was not a proceeding that affected the deed of trust's security or the rights and powers of the trustee within the meaning of paragraph III.C(8). The adversary proceeding merely gave Global an opportunity to test the legitimacy of the trustee's demands at the closing. It in no way affected the shopping center, the deed of trusts's security. I accordingly reverse the bankruptcy court's award of $7,997.97 in fees and costs to the trustee.

### IV. *Conclusion*

I affirm the decision of the bankruptcy court as to the $56,000 late fee, but reverse it as to the $12,000 award for attorney's fees and the $7,997.97 award for fees and costs in the adversary proceeding. I award no fees in this appeal.