## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 22 2017, 6:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Kevin L. Moyer
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Richard B. Gonon
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kimberly Stanley and Anthony Stanley, *Appellants-Defendants,* <br><br> v. <br><br> Pawnee Leasing Corp., *Appellee-Plaintiff* | June 22, 2017 <br><br> Court of Appeals Case No. 54A01-1609-CC-2176 <br><br> Appeal from the Montgomery County Circuit Court <br><br> The Honorable Harry A. Siamas, Judge <br><br> Trial Court Cause No. 54C01-1307-CC-547 |

**Altice, Judge.**

### Case Summary

[1]     Following a bench trial, Anthony and Kimberly Stanley appeal a judgment entered against them (as well as their defunct company Hoosier Imprints, LLC (Hoosier Imprints)) and in favor of Pawnee Leasing Corporation, Ltd.

(Pawnee) in the amount of $58,298.88. The Stanleys acknowledge default under a contract entitled "Lease Agreement" (the Agreement) but argue that the Agreement constituted a sale subject to a security interest rather than a true lease. As a result, they contend that Article 9 of Title 4 of the Colorado Revised Statutes governs the Agreement[1] and provides certain notice requirements that were not followed by Pawnee.

We affirm.

## Facts & Procedural History

On October 6, 2009, Pawnee's predecessor in interest entered into the Agreement with Hoosier Imprints pursuant to which Hoosier Imprints agreed to make 55 monthly payments of $1309.24 to lease a screen printer. The Agreement included an Equipment Lease Guaranty executed by the Stanleys, as well as a Purchase Option that allowed Hoosier Imprints to purchase the printer at the conclusion of the lease at its fair market value, not to exceed $6546.20.

Relevant to this appeal, Paragraph 4 of the Agreement provided in part:

> STATUTORY FINANCE LEASE: Lessee agrees and
> acknowledges that it is the intent of both parties to this Lease that
> it qualify as a statutory finance lease under Article 2A of the
> [UCC] as adopted by the state of Colorado. Lessee

---

[1] The parties agree that Colorado law applies to the Agreement. Colorado has adopted the Uniform Commercial Code (the UCC), which is codified under Title 4 of the Colorado Revised Statutes.

acknowledges and agrees that Lessee has selected both (1) the Equipment; and (2) the Supplier from whom Lessor is to purchase the Equipment. Lessee acknowledges that Lessor has not participated in any way in Lessee's selection of the Equipment or of the Supplier, and Lessor has not selected, manufactured, or supplied the Equipment.

*Appellants' Appendix* at 16. In line with being a statutory finance lease, the Agreement provided that Hoosier Imprints obtain insurance and bear the risk of loss. Hoosier Imprints was also required to pay all taxes and fees related to the printer. Pawnee disclaimed all warranties and retained title to the printer during the lease period. Additionally, the Agreement provided that upon acceptance of the printer, Hoosier Imprints' obligations became absolute and unconditional. Finally, Paragraph 10 provided in part: "Lessee agrees this is a 'true lease' and not one intended as security for purposes of Section 1-201 (37)[2] of the [UCC]." *Id.* at 17.

[5] After making 18 monthly payments totaling over $23,000, Hoosier Imprints ceased operations and notified Pawnee of Hoosier Imprints' pending default under the Agreement. Pawnee, with Hoosier Imprints' cooperation, took possession of the printer on July 18, 2011. The printer was sold through a third party in October 2012 for $800.00. During this process, Pawnee sent several notices to Hoosier Imprints and the Stanleys through regular mail to an address

---

[2] We observe that this is an erroneous reference, as security interest is no longer defined in Colo. Rev. Stat. § 4-1-201(37). Since 2006, the provision distinguishing a lease from a security interest has been codified at C.R.S. § 4-1-203.

in Michigantown rather than the Crawfordsville address set out in the Agreement. The Stanleys never received notice of Pawnee's intent to sell the printer.

[6] In February 2013, Pawnee provided the Stanleys with a payoff quotation of $48,603.88. Thereafter, on July 22, 2013, Pawnee filed suit against Hoosier Imprints and the Stanleys. After a number of delays, a short bench trial was held on June 28, 2016. The trial court took the matter under advisement and then issued its order on August 23, 2016, entering judgment in favor of Pawnee in the amount of $58,298.88. In doing so, the court specifically concluded that Article 2.5 – rather than Article 9 – of Title 4 of the Colorado Revised Statutes governed and, thus, the stricter notice requirements of Article 9 did not apply.

## Discussion & Decision

[7] The Stanleys argue that the Agreement was a secured sale disguised as a lease and, therefore, governed by Article 9 dealing with secured transactions. Under Article 9, the Stanleys assert that Pawnee would have been required to send to them "a reasonable authenticated notification of disposition." Colo. Rev. Stat. § 4-9-611(b). Failure to provide such notice where required "creates a presumption that upon default the value of the collateral is to be measured by the amount of the balance of the debt and that, absent proof to the contrary, such creditor is not entitled to any deficiency judgment against the debtor." *May v. Women's Bank, N.A.*, 807 P.2d 1145, 1147 (Colo. 1991).

[8]     In arguing that the Agreement was a secured transaction, the Stanleys direct us to outdated caselaw. Specifically, they rely on *Lease Fin., Inc. v. Burger*, 575 P.2d 857 (Colo. Ct. App. 1977) and *H.M.O. Sys., Inc. v. Choice Care Health Servs., Inc.*, 665 P.2d 635 (Colo. Ct. App. 1983) for the proposition that the mutual intention of the parties is controlling when determining whether a transaction is a true lease or a sale subject to a security interest. The Stanleys then direct us to seven factors to consider when determining the intent of the parties:

> (1) Whether the lessee is given an option to purchase the equipment, and, if so, whether the option price is nominal; (2) whether the lessee acquires any equity in the equipment; (3) whether the lessee is required to bear the entire risk of the loss; or (4) pay all charges and taxes imposed on ownership; (5) whether there is a provision for acceleration of rental payments; (6) whether the property was purchased specifically for lease to this lessee; and (7) whether the warranties of merchantability and fitness for a particular purpose are specifically excluded by the lease agreement.

*Lease Fin., Inc.*, 575 P.2d at 859-60 (citations omitted). *See also H.M.O. Sys., Inc.*, 665 P.2d at 638.

[9]     The Stanleys fail to recognize, however, that the UCC was revised in 1987 to remove all reference to the parties' subjective intent when entering into a lease agreement. The Official Comment to post-1987 UCC § 1-203 addresses why this change was made:

> Reference to the intent of the parties to create a lease or security interest led to unfortunate results. In discovering intent, courts relied upon factors that were thought to be more consistent with

sales or loans than leases. Most of these criteria, however, were
as applicable to true leases as to security interests. Examples
include the typical net lease provisions, a purported lessor's lack
of storage facilities or its character as a financing party rather
than a dealer in goods. Accordingly, this section contains no
reference to the parties' intent.

See also C.R.S. § 4-1-203; *Gibraltar Fin. Corp. v. Prestige Equip. Corp.*, 949 N.E.2d
314, 318-24 (Ind. 2011) (discussing this change in a case applying Colorado law
and recognizing that the laundry-list approach has been rejected).[3]

[10] Further, with Colorado's adoption of Article 2A of the UCC in 1992, the
concept of a finance lease was recognized.[4] *See* Colo. Rev. Stat. § 4-2.5-
103(1)(g) (defining the term). This category represents leases where the lessor –
in a three-party transaction – purchases the goods only for the purpose of
delivery to the lessee. The lessor is not a dealer in the goods being leased and
does not intend to assume responsibility to the lessee in connection with the
leased property, which has been selected by the lessee. *See* C.R.S. § 4-2.5-103
cmt. (g) ("Due to the limited function usually performed by the lessor, the lessee
looks almost entirely to the supplier for representations, covenants and
warranties."). Unlike other leases, the risk of loss passes to the lessee in a
finance lease. C.R.S. § 4-2.5-219. Moreover, in a non-consumer finance lease,

---

[3] C.R.S. § 4-1-203(c), in fact, expressly provides that a security interest is not created merely because, among other things, the lessee assumes the risk of loss or agrees to pay taxes and fees related to the goods.

[4] Colorado codified this article of the UCC under Article 2.5 rather than 2A.

"the lessee's promises under the lease contract become irrevocable and independent upon the lessee's acceptance of the goods." C.R. S. § 4-2.5-407(1).

[11] Article 2.5 treats finance leases as true leases assuming the definitional elements of a lease are met. As our Supreme Court has recognized, "decisions, treatises, and articles on commercial law are replete with declarations of the difficulty in distinguishing between 'true' leases and sales subject to security agreements." *Gibraltar Fin. Corp.*, 949 N.E.2d at 318. Under current law, this requires consideration of C.R.S. § 4-2.5-103(1)(j) (defining the term "lease") and, more particularly, C.R.S. § 4-1-203 (setting out detailed rules for distinguishing whether a transaction in the form of a lease creates a lease or a security interest). *See Gibraltar Fin. Corp.*, 949 N.E.2d at 319-20 (detailing the analysis under C.R.S. § 4-1-203).

[12] On appeal, the Stanleys have made no attempt to apply the current statutory provisions to establish that the Agreement was a security interest rather than a true lease. Such a determination would include an analysis of the remaining economic life of the printer as compared to the lease term, whether the option to purchase was for nominal additional consideration, and the reasonably predictable fair market value of the printer at the time the option is to be performed with reference to the facts and circumstances at the time the Agreement was entered into. *See id.* at 321-24.

[13] We refuse to craft arguments for the Stanleys, especially in an area of law that is so complex. *See Ramsey v. Review Bd. of Ind. Dep't of Workforce Dev.*, 789 N.E.2d

486, 487 (Ind. Ct. App. 2003) ("We will not become an advocate for a party, nor will we address arguments which are either inappropriate, too poorly developed or improperly expressed to be understood.") (quoting *Terpstra v. Farmers and Merchants Bank,* 483 N.E.2d 749, 754 (Ind. Ct. App. 1985), *trans. denied*). Accordingly, we conclude that the Stanleys have wholly failed to establish that the trial court erred in determining that the Agreement constituted a finance lease rather than a purchase agreement/security interest and that, therefore, the Agreement was governed by Article 2.5 of Title 4 of the Colorado Revised Statutes.

[14] Judgment affirmed.

[15] Kirsch, J. and Mathias, J., concur.