No. 16,424.

HUSCHER *v.* PFOST.

(221 P. [2d] 931)

Decided August 21, 1950.

Mr. LEONARD V. B. SUTTON, for plaintiff in error.

Messrs. FOARD BROTHERS, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

REFERENCE will be made to the parties as they appeared in the trial court, namely, plaintiff in error as plaintiff and defendant in error as defendant.

On December 27, 1948, plaintiff filed his complaint in damages against defendant, alleging that due to certain representations by the latter and on or about November 20, 1947, he purchased sufficient antifreeze solution for a Chevrolet automobile from defendant, who operates a gasoline service station at Simla, Colorado. He further alleged that, resulting from the use of the solution, his automobile was damaged in the amount of $454.37, and that he sustained further damages by the loss of the use of the car in the sum of $180.00. He prayed for actual damages in that amount, together with exemplary damages in the sum of $500.

Defendant answered, admitting the sale and generally denying all other allegations of the complaint, and by an amended answer and an affirmative defense, alleged that the antifreeze solution sold to plaintiff was a sale of a specified article under its trade name as defined by paragraph 4, chapter 228, section 15, Session Laws of 1941, the Uniform Sales Act of the State of Colorado. By stipulation, the case was tried to the court without a jury resulting in a finding against plaintiff on the grounds that there was no evidence to sustain a judgment for exemplary damages; that plaintiff failed to prove how the antifreeze purchased got into the interior of the motor, whether due to the chemical composition of the solution or to defects in the motor; that there is no implied warranty that the antifreeze solution was reasonably fit for the purpose used, because the evidence is

insufficient to establish that the buyer relied on the seller's skill and judgment as to the quality of the antifreeze; and further that the antifreeze was sold to plaintiff under the trade-name of "Pro-tex-en" and that there was no implied warranty as to its fitness for any particular use as provided in the Uniform Sales Act.

Six points are specified as error, which, for our purpose, may be summarized as follows: That the court erred in finding that the Colorado Uniform Sales Act protects this defendant; that the court erred in finding there was no implied warranty for the benefit of plaintiff; and that the court erred in finding that the plaintiff did not rely on defendant's skill and judgment in making the purchase.

Plaintiff testified that at the time, about the latter part of November 1947, there was a scarcity of antifreeze solution on the market and that he operated the automobile in question, also a truck and school bus; that he had been a customer of the defendant over a long period of time, visiting the service station nearly every day during the school period and frequently at other times; that on or about November 20, the following advertisement, inserted by defendant, appeared in the Simla Sun, a newspaper published at Simla:

"Pfost Mortems:

"Last night we overheard two good-looking women agree that even the stars shine brighter over Simla than anywhere else.

"Just Received
"Anti-freeze

"One hundred gallon of permanent type. A glycerine base product that mixes and tests with any permanent type anti-freeze. Bring your own container if you want to take it away at $4.50 per gal.

"Dempsey Pfost
"Standard Service
"We Like Simla"

That on reading the advertisement, he talked with

defendant about it because he had requested defendant to watch for some antifreeze all fall; that on the strength of the ad, he went to defendant's station to get some antifreeze since that was the only place he knew where he could buy any at that time; that he asked if the antifreeze was any good and defendant said, " 'It was the same base as Prestone and glycerine * * * it is just as good as they are,' or words to that effect." That defendant did not tell him who manufactured the antifreeze; that he was not told the make or the trade name by defendant; that all he knew was the ad in the paper, that it was supposed to be a glycerin-base, permanent type, antifreeze, and in reliance on the ad, he made the purchase; that when he took his car to the station he told the attendant that he wanted antifreeze in the car that would stand a temperature of twenty-five to thirty degrees below zero; that he was not present when the solution was put in his car; that he used the car until the night before Christmas when it stalled on the street in Simla and could not be started. Shortly after Christmas day, he took the car to the garage and a mechanic examined the motor and found the cylinders and the working parts in a badly rusted condition; that he called defendant to come in and examine the car. Defendant's testimony on this question is as follows:

"Q. Did you come in and examine the car at that time? A. I did; yes, sir. Q. What did you see? A. Well, I saw an ugly looking motor. I am not a mechanic, but I could see that there was plenty wrong with the inside of the motor— Q. Rusted? A. It looked like rust and corruption—I don't know. Q. Was there any white material on the outside? A. I believe there was; yes, sir. Q. At that time did you state that that damage was due to the anti-freeze? A. I don't know whether those are the exact words I might have said it looked like it, which it did. I wouldn't know except apparently that is what it would look like. Q. As far as you can recall, you think it looked as though the damage was due to

the anti-freeze? A. That's right. Q. Did you say anything to the Plaintiff that it was due to the anti-freeze? A. Well, I don't recall that. I probably did, though, because that was plain to see. Q. That was what? A. That was very evident. Q. It was very evident that it was due to it? A. Certainly."

There is no dispute as to the condition of plaintiff's car or as to its damage. The mechanic who worked on the car stated that he was familiar with the effect of antifreeze solution that contained a salt base on automobile motors, and that in his opinion and from the taste of the corrosion, the solution in plaintiff's car was salt base, and the damage was caused thereby. He further testified that he had recently worked on plaintiff's car and that it was in good condition to receive antifreeze solutions.

After learning of plaintiff's claim, there is evidence showing that defendant notified other customers who had bought the solution and suggested that they drain their cars and that the money they had paid for the solution was refunded by defendant. A sample of the solution from plaintiff's car was taken, but it was lost and destroyed in some manner and was not available for an analysis for the purposes of the trial.

We believe it was sufficiently established by the evidence that the damage to plaintiff's car was caused by the antifreeze solution; however, the question of plaintiff's right to recover depends upon the circumstances surrounding the sale. Defendant admits the sale and said that the solution was sold under the trade name and according to the labels on the can. The employe of defendant stated that it was their custom to show a purchaser the label on the can prior to, or at the time of the purchase of the solution. The positive testimony of plaintiff that he was not shown a label or told anything about the trade name is not satisfactorily rebutted by defendant's evidence. Relying on the ad, plaintiff's actions and conduct in purchasing the solution were in

keeping with the usual and ordinary transaction in such a matter. He told defendant what he wanted and left it to defendant's judgment and skill to supply him with a sufficient and safe solution. The advertisement was defendant's description of the solution and it is not disputed that plaintiff bought the solution in reliance upon the description in the ad, and in so doing, brought himself squarely within paragraph 2 of section 15, chapter 228, Session Laws of 1941, the Uniform Sales Act, which is: "Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

The uncertainty of defendant's evidence relating to the matter of showing plaintiff the labels or the trade name, is such that defendant cannot rely on paragraph 4, section 15, chapter 228, supra, which is as follows: "In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose." and the trial court was in error in holding that he could do so.

In support of plaintiff's testimony on this question, it is significant to note that the advertisement as hereinbefore set out contains no name of the product. The lack of satisfactory positive proof that the solution was sold under the trade name, and in view of plaintiff's testimony concerning the purchase, we are of the opinion that there was an implied warranty that the product was of merchantable quality. So far as merchantability is concerned, to plaintiff, and for his uses, the solution was not merchantable if it produced the damage clearly established. Being advised of plaintiff's needs, the acts of defendant in supplying those needs was an express warranty of the fitness of the product sold to plaintiff for his particular use for a car with which defendant was familiar. Under all of the other circumstances of

the case, there was, by law, an implied warranty as to the fitness of the solution, and in either or both events, defendant is liable.

The judgment is reversed and the cause remanded with instructions that judgment be entered in favor of plaintiff against the defendant for the amount of the actual damages established. The evidence does not support any claim for exemplary damage.

MR. CHIEF JUSTICE HILLIARD not participating.