### No. C-548

**Fred Hiigel v. General Motors Corporation, Chevrolet Motor Division, a Delaware corporation; Aspen Coach Corporation, a Colorado corporation; and Eldon Martin d/b/a Martin Motor Company**

(544 P.2d 983)

Decided December 15, 1975. Opinion modified and as modified rehearing and motion for clarification denied February 9, 1976.

H. D. Reed, for petitioner.

Davis, Graham & Stubbs, Randall Weeks, Charles D. Calvin, for respondent General Motors Corporation, Chevrolet Motor Division.

Williams, Trine & Greenstein, P.C., LeRoy D. Warkentine, Charles E. Williams, for respondents Aspen Coach Corporation and Eldon Martin, d/b/a Martin Motor Company.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This is a products liability case in which plaintiff appeals from an affirmance by the court of appeals, *Hiigel v. General Motors Corp.*, 34 Colo. App. 145, 525 P.2d 1198 (1974), of a judgment in the trial court favorable to the defendants. We reverse and remand for further proceedings.

In January, 1971, plaintiff purchased a 25-foot motor home from a retailer, Martin Motor Co. (Martin). The unit had been manufactured and assembled by defendant Aspen Coach Corporation (Aspen), and mounted on a Chevrolet truck chassis manufactured by defendant General Motors Corporation (GMC).

In April and again in May 1971, plaintiff made two business trips in the motor home. On each occasion, after traveling about 500 miles, the lug bolts on the wheels sheared off, one time on the left and one time on the right, causing the dual rear wheels to part company with the vehicle. Evidence shows that Hiigel attempted from the time of the first failure to have the unit repaired. He talked with several Chevrolet dealer personnel, one of whom told him the wheels had been too loose, another of whom told him the wheels had been too tight. After each failure, plaintiff made oral and written complaint and demand upon all defendants, all of whom disclaimed any liability incurred as a result of the wheel failures.[1]

Plaintiff eventually replaced the Chevrolet chassis with a heavier duty rear end Chevrolet assembly in July 1972, at the cost of $1,910.00. The lawsuit instituted by the plaintiff sought recovery of this and related repair expenses, together with a loss of business use of the vehicle. The claims for relief against all three defendants were based on strict liability in tort, breach of implied warranty of merchantability, and breach of express warranty.

The crucial issues for purposes of this appeal involve the fact that the wheel attachment system of the unit was designed to be functional only when 75 to 110 foot pounds of "torque" were applied to the wheel stud bolts, and that it was necessary to test the torque pressure at specific intervals of mileage driven. Undisputed evidence at trial showed that the wheel detachments occurred because the manufacturer's specifications as to torque had not been maintained. According to testimony of two experts, the torque range was a critical one, so that "undertorquing" at 60 pounds or

---

[1] On one of plaintiff's business trips, plaintiff experienced engine trouble, and a fire in the engine compartment. Judgment entered by the trial court was in favor of the plaintiff on this issue, holding Aspen liable for the electrical fire problems under its express warranty. No cross-appeal was taken from this part of the judgment, and it is not before this court.

less, or "overtorquing" at 150 pounds or more, would cause the stud bolts to shear, and the wheels to break loose while the vehicle was in operation.

The "owner's manual" which customarily accompanies each chassis supplied by General Motors contains the requirements as to "torque" as well as mileage intervals of application as follows:
"WHEELS
"Wheel Nut Torques — 10-30 Series
"On a new vehicle or after the wheel has been changed, the wheel nut torque must be checked at 100, 1,000 and 6,000 miles and every 6,000 miles thereafter.
"Retorque wheel nuts to 55-75 ft. lbs. on 10 Series and 65 to 90 ft. lbs. for 20-30 Series models.
"Heavy Duty Wheels on 30 Series
"On a new vehicle or after the wheel has been changed, the wheel nut torque must be checked at 100, 500, and every 1,000 miles thereafter.
"Torque wheel nuts 200-250 lbs. ft. on 30 Series trucks with 11,000 lb. rear axles, RPO H-22, on 10-30 series, RPO RO5, torque 75-110 ft. lbs."

If a purchaser received the manual, and was familiar with the type of chassis owned by him — as a result of checking the chasis rating plate located under the steering column below the dash — he would know the required torque and mileage interval of application. Nowhere in the manual was any warning given as to dangers to be anticipated if the torque requirements were not met.

At trial, the president of Aspen testified that the manual was in the unit before its delivery to Martin. Martin did not know if it was in the unit upon his delivery of the motor home to the plaintiff. The plaintiff testified that the manual was not delivered to him with the unit; that, after delivery of the unit to him, he made two telephone calls to Aspen requesting the manual; that he was promised on both occasions that it would be sent to him; and that he did not receive the manual until after he had incurred the costs of repair and replacement.

The plaintiff had maintained and tightened the stud nuts by use of a socket wrench with leverage supplied by a two-foot long pipe handle to a tension by which he felt, by "experience," that the nuts were "snug" and "tight." He testified that he had tightened them in this manner immediately before each of the two attempted trips. Also admitted was the plaintiff's experience in wheel maintenance gained from working in his father's automobile and truck repair business forty years earlier. It was undisputed that the plaintiff made no attempt to keep the bolts within the manufacturer's required 75 to 110 foot pounds of torque.

As mentioned, the trial court ruled adversely to the plaintiff on his three theories of liability: strict liability, breach of implied warranty and breach of express warranty. The court's ruling under the claim of strict liability was ruling in tort and was predicated upon the court's interpreta-

tion of *Restatement (Second) of Torts* §402A. That portion of the Restatement reads as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

The trial court's rulings under consideration here came at the close of the plaintiff's case. As to the claim of strict liability in tort, the court based its ruling on the theory that *Restatement* § 402A applies only to personal injury or damage to the consumer's property other than to that property which proves to be defective; and in this case, damage to the vehicle itself would not be covered by 402A. The trial court also dismissed the other claims against GMC (breach of implied and of express warranties) upon the basis that the evidence failed to establish a "defect" at the time it left the latter's control. It also dismissed the implied warranty claim as against Martin on the basis that he was merely a "sales agent" for Aspen and therefore gave no warranty. At the close of all the evidence, the court denied recovery based upon the wheel-attachment failures, noting that plaintiff had failed to prove that the manual had not been delivered. The court further found that the motor home was of merchantable quality and was adequate for the plaintiff's purposes.

The court of appeals affirmed the trial court, holding that it could not disturb on review the finding that the plaintiff failed to prove that the manual had not been delivered. Further, the court of appeals ruled that, assuming that the instructions from GMC were not sufficient to warn the ordinary consumer of the danger associated with the critical wheel maintenance, the plaintiff's own testimony — concerning his experience with the necessity for maintaining proper torque requirements — precluded him from complaining that he did not receive instructions and warnings. On the issue of strict liability, the court of appeals held that the question of damages was moot, since the trial court's finding that the motor home was merchantable (under the theory of implied warranty) was tantamount to a finding that the vehicle was not at that time defective within the meaning of *Restatement (Second) of Torts* § 402A.

I.

█ This court has not heretofore expressly adopted § 402A. However, the Colorado Court of Appeals in *Bradford v. Bendix Westinghouse Automotive Air Brake Co.*, 33 Colo. App. 99, 517 P.2d 406 (1973), *cert. denied* (1974), declared that the doctrine of strict liability under §402A is available under the law of this state. The court in that case delineated the principles of strict liability. We hereby expressly adopt the doctrine of strict liability in tort which is stated in § 402A.

█ Under § 402A, a product must be defective before liability will inure. The major issue to be addressed by this court is whether a failure to warn adequately can render a product, otherwise free of defect, defective for purposes of § 402A. We answer this question in the affirmative. *Restatement (Second) of Torts* §402A, Comment j, states:

"In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use."

This comment has been used by other courts as a basis of liability for failure to warn. *Jackson v. Coast Paint and Lacquer Co.*, 499 F.2d 809 (9th Cir. 1974); *Canifax v. Hercules Powder Co.*, 237 Cal. App. 2d 44, 46 Cal. Rptr. 552 (1965); *Crane v. Sears Roebuck & Co.*, 218 Cal. App 2d 855, 32 Cal. Rptr. 754 (1963).

In this case, evidence shows that wheel detachment was inevitable, in the absence of the critically necessary wheel maintenance. The trial court found that the plaintiff had not sustained the burden of proving that the manual had not been delivered to him. We do not pass upon this ruling but rather proceed to the question of the *adequacy* of the warnings. That question (assuming *arguendo* that the plaintiff had the manual) appears to have been left unanswered by the trial court. The question of the adequacy of the warning was addressed in *Crane, supra,* as follows:

"' 'The warning should be such that if followed would make the product safe for users. To comply with this duty the manufacturer or supplier must appropriately label the product, giving due consideration to the likelihood of accident and the seriousness of consequences from failure to so label it as to warn of any dangers that are inherent in it and its use or that may arise from the improper handling or use of the product.'"

█ Where there is such a failure to comply with the duty to warn, the effect is that the product may be considered defective when the proximate cause of the injury is the breach of that duty. This is the concept of "defective" as used in the remainder of this opinion.

█ Defendants urge that failure to warn is a concept that has its origin in negligence, and that since negligence was not pleaded, the plaintiff is precluded from recovery for failure to warn under strict liability. Although there is support for this argument *(Anderson v. Klix Chemical Co.*, 256 Or. 199, 472 P.2d 806 (1970)), we do not agree with it. We think the better· rule is stated in 2 *L. Frumer & M. Friedman, Products*

*Liability* 16A[4]:

"[M]anufacturer's liability in strict tort does not rest upon the normal negligence rules of forseeability, but upon the newer concept of enterprise liability for casting a defective product into the stream of commerce. Thus strict tort liability shifts the focus from the conduct of the manufacturer to the nature of the product."

In *Jackson v. Coast Paint and Lacquer Co., supra,* the Circuit Court of Appeals for the Ninth Circuit held that warnings on the label of a paint container must be tested using the standard of whether the product was "dangerous to an extent beyond that which would be contemplated by the ordinary consumer." *See also 2 L. Frumer & Friedman, Products Liability* 16A[4]; and Comment i, *Restatement (Second) of Torts* § 402A.

■ We cannot agree with the court of appeals in its conclusion that the plaintiff was precluded from recovery because of failure to warn by reason of his general experience and knowledge as to wheel maintenance. The measurement must be according to whatever relevant knowledge and understanding the plaintiff possessed.

■ We agree with plaintiff's argument that his general knowledge of wheel maintenance and of the fact that stud nuts must be kept tight is not the legal equivalent of knowledge of a manufacturer's specific torque requirement. In the record we find no inference that the wheel assembly experience obtained decades ago gave plaintiff knowledge of the specific critical requirements essential to safe maintenance of this particular vehicle. On remand, however, the defendants will be entitled to show, if they can, that the plaintiff "voluntarily and unreasonably proceed[ed] to encounter a known danger." This showing would constitute a defense to the action under § 402A. *See Restatement (Second) of Torts* § 402A, Comment n.

II.

■ In the case before us, the manual pointed out the exact torque requirements which, had they been met, would have avoided the resulting failures. There was no implied, or express warning of the inherent risk involved if the torque requirements were not met. We think that the duty to warn may not be satisfied by directions which merely tell how to use the product, but say nothing about the inherent and specific dangers if directions are not followed. *Anderson v. Klix Chemical Co.,* 256 Or. 199, 472 P.2d 806 (1970).

III.

■ On the issue of damages the trial court's interpretation of § 402A was too narrow. Although there is a split among the jurisdictions as to whether the damage to the product sold is covered under the doctrine of strict liability, we think the wiser view is that it is. *Santor v. Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305, 13 A.L.R.3d 1090 (1965). Since under § 402A the burden of having cast a defective product into the

stream of commerce falls upon the manufacturer, it appears inconsistent to limit his responsibility to property other than the product sold.

At this time, however, we decline to extend the doctrine of 402A to commercial or business loss. This view is in accord with those of several other jurisdictions which have so limited the doctrine in the terms of the Restatement to "physical harm . . . caused to the ultimate user or consumer, or to his property . . . ."[2] *Seely v. White Motor Co.,* 63 Cal. 2d 9, 45 Cal. Rptr. 17, 403 P.2d 145 (1965); *Santor v. Karagheusian, Inc., supra; Price v. Gatlin,* 241 Or. 315, 405 P.2d 502 (1965).

## IV.

 GMC argues that, even if the failure to warn could state a claim against it, there is a lack of privity precluding recovery. Further, GMC contends that, even if the privity requirement is abrogated, the doctrine should not apply with respect to the remote manufacturer of a component part of a vehicle. We do not agree with either of these contentions. Section 402A specifies that the doctrine applies to manufacturers, wholesalers, or retail dealers or distributors. *See Restatement (Second) of Torts* § 402A, Comment f. Furthermore, Comment q under § 402A, suggests, although no opinion is expressed, that it is to be expected that where there is no change in the component part itself, but it is merely incorporated into something *larger,* the strict liability will be found to carry through to the ultimate user or consumer. We find this entirely consistent with the purposes and provisions of § 402A, and we so hold.

## V.

 We rule that the trial court erred in dismissing the action based on express warranty by GMC. The express warranty guaranteed parts and workmanship for a period of two years. This holding logically follows views expressed herein, in that the dismissal was based upon the failure to show defect. GMC further argues that no implied warranty exists as to it because the express warranty accompanying the sale ended with the following "conspicuous provision:"

## "SOLE WARRANTY

"This Warranty is the only Warranty, expressed or implied, applicable to the Vehicle. Chevrolet (General Motors Corporation) neither assumes nor authorizes any other person to assume for it any other obligation or liability in connection with the Vehicle."

This notice, GMC contends, complies with the requirements of section 4-2-316(3), C.R.S. 1973. That provision states that exclusions of implied warranties must be stated in "language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain

---

[2] We do not have before us a case in which monetary losses were incurred as a result of personal injuries caused by a defective product, and we offer no opinion as to whether such losses should be covered.

66

that there is no implied warranty . . . ." This court in *Cherokee Investment Co. v. Voiles,* 166 Colo. 270, 443 P.2d 727 (1968), interpreted prior similar statutory provisions and held that although a general disclaimer clause may negate implied warranties if there is a negotiated contract between a commercial seller and a commercial buyer, it is not appropriate to a consumer sale. This is so unless it is shown that "the so-called disclaimer was clearly brought to the attention of the buyer and agreed to by him . . . ." *See also, Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A.2d 69 (1960). We think the public policy considerations are the same under either the prior or current statutory provisions. Therefore, we hold that the disclaimer alone is insufficient to relieve GMC of liability of implied warranty of merchantability.

## VI.

The last issue raised here is the dismissal of the action against Martin. Both under implied warranty of merchantability, and under § 402A, plaintiff has stated a cause of action against the retailer. *Cherokee Inc. Co. v. Voiles, supra; Huscher v. Pfost,* 122 Colo. 301, 221 P.2d 931 (1950); and section 4-2-314, C.R.S. 1973. Further, according to undisputed testimony, Martin operated independently of Aspen as a retail seller. The finding of the trial court that he was merely an agent is not supported by the evidence in the record, and we, therefore, reverse it.

The trial court did not assess damages. We have ruled in this opinion that commercial or business losses are not recoverable. Since the trial court did not go into the question of damages, neither will we except as just noted. In other words, we do not indicate what the extent of damage may be to the property involved and, particularly, we express no conclusion as to whether it was necessary to obtain the heavier assembly.

The dismissal of the three claims is reversed as to all respondents and the cause is returned to the court of appeals for remand to the trial court with directions to order a new trial to be conducted consonant with the views expressed in this opinion.

On rehearing, MR. JUSTICE KELLEY, MR. JUSTICE LEE and MR. JUSTICE ERICKSON now dissent.

MR. JUSTICE LEE dissenting.

On petition for rehearing, I now respectfully dissent.

While I agree with the adoption by this court of the doctrine of strict liability, set forth in *Restatement (Second) of Torts,* 402A, and with the concept that a product may be defective and unreasonably dangerous to the user where there is a failure to adequately warn as to its proper maintenance and use, I disagree with the court's extension of the doctrine of strict liability to allow recovery for damages resulting to the property

which is the subject of sale and proves to be defective and unreasonably dangerous. I consider this to be an unnecessary enlargement of the strict liability doctrine in duplication of available appropriate remedies.

In my view, *Santor v. Karagheusian,* 44 N.J. 52, 207 A.2d 305, 16 A.L.R.3d 670, which was essentially a breach of warranty case, sets forth no compelling reason to extend the application of strict liability to the property which is the subject of the sale. The following cases, which I consider more persuasive, take the opposite view: *Seely v. White Motor Co.,* 63 Cal. 2d 9, 403 P.2d 145, 45 Cal. Rptr. 17; *Brewer v. Reliable Automotive Co.,* 240 Cal. App. 2d 173, 49 Cal. Rptr. 498; *TWA v. Curtiss-Wright Corp.,* 1 Misc. 2d 477, 148 N.Y.S.2d 284, aff'd 2 App. Div. 2d 666, 153 N.Y.S.2d 546 *See also R. Hursh & H. Bailey, American Law of Products Liability* (2d ed. 1974) § 4:21; 63 Am. Jur. 2d *Products Liability* § 140.

While the strict liability theory may legitimately be used to allow recovery for injuries to persons and property (other than property covered by warranty), I feel that to apply the rationale of section 402A to the product itself would unduly confuse an already uncertain area of the law involving tort and contract theories of recovery.

Remedies in the instant situation are better left to the UCC warranty provisions, specifically section 4-2-318, C.R.S. 1973, which extends warranties to "any person who may reasonably be expected to use, consume, or be affected by the goods and who is injured by breach of the warranty." The privity obstacle that was formerly a problem in warranty cases appears to be effectively eliminated by this provision, and should not in and of itself prevent recovery in this case on remand for a new trial.

I would, therefore, affirm the ruling of the district court, denying recovery on the theory of strict liability, and would reverse and remand for a new trial on the warranty issues.

I am authorized to say that MR. JUSTICE KELLEY and MR. JUSTICE ERICKSON join in this dissent.