The **AETNA CASUALTY AND SURETY COMPANY, Plaintiff-Appellant,**

v.

The **CRISSY FOWLER LUMBER COMPANY, a Colorado corporation, Defendant-Appellee.**

No. 82CA1051.

Colorado Court of Appeals,
Div. II.

May 24, 1984.

Rehearing Denied July 5, 1984.

Tilly & Graves, P.C., David D. Schlachter, Denver, for plaintiff-appellant.

Long & Jaudon, P.C., David B. Higgins, Denver, for defendant-appellee.

VAN CISE, Judge.

Plaintiff, Aetna Casualty and Surety Company (Aetna), as subrogee, brought this action to recover from defendant, Crissy Fowler Lumber Company (Crissy Fowler) the costs of repair of Aetna's insured's building. From a judgment dismissing its claims, based on negligence *per se*, on implied warranty of fitness for a particular purpose, and on strict liability, Aetna appeals. We reverse.

The building was constructed in 1974. Crissy Fowler was the designer, manufacturer, and supplier of the wood trusses which supported the roof.

In May 1978, there was a heavy snowfall in Colorado Springs where the building is located. Two days after the snowfall, the ceiling of the building began to sag. Inspection revealed that some of the trusses had pulled apart at their joints, causing the trusses to deflect or fail. Not only was there damage to the roof, walls, ceilings, and insulation as a result of the failure of the trusses, but even the trusses themselves were damaged.

The owner had the damage repaired, at a cost of $19,111. Pursuant to the terms of the insurance policy, Aetna reimbursed the owner. Then, as subrogee, it sued Crissy Fowler, alleging that the roof collapse occurred because the trusses were inadequately designed and constructed. Aetna asserted claims based on negligence, breach of implied warranties, and strict liability.

At the conclusion of the trial, the case was submitted to the jury only on Aetna's claims of negligent design and manufacture and breach of implied warranty of merchantability. The court in effect dismissed Aetna's other claims by denying its tendered instructions on negligence *per se* based on a violation of the city building code, on implied warranty of fitness for a particular purpose, and on strict liability pursuant to *Restatement (Second) of Torts* § 402A (1965).

Based on the instructions given, the jury returned a verdict for Crissy Fowler. This appeal followed.

## I.

Aetna first claims that, inasmuch as the trusses as constructed did not meet the requirements of the city building code, the trial court erred in refusing to instruct the jury on negligence *per se*. We agree.

The trial court's ruling was based on *Iverson v. Solsbery*, 641 P.2d 314 (Colo. App.1982). In that case, defendant Solsberry had constructed certain improvements in a building without a building permit and in violation of provisions of the Colorado Springs building code. Subsequent purchasers, the Iversons, required by the city to do corrective work to meet the code requirements, sued Solsberry to recover the cost of the remedial construction. They alleged tortious conduct in connection with the original improvements made and misrepresentations in the sale of the property. This court reversed a summary judgment for Solsberry, holding that her alleged conduct in violating the building code constituted an intentional tort and her alleged failure to disclose latent defects made her subject to liability for deceit. We did hold that, based on the facts in that case, Solsberry's conduct was not negligent *per se*, stating:

"Violation of a statute or ordinance constitutes negligence *per se* only if the injured party is a member of the class such statute or ordinance was designed to protect, and if the injury is of the type sought to be protected against.... The purpose of the Colorado Springs Building Code is generally to protect the public from injuries resulting from substandard or unsafe construction.... And, here the Iversons' costs expended in bringing the building into compliance, although constituting real and substantial damages, was not basically the type of injury that the building code was designed to prevent or guard against."

However, in the instant case, different from *Iverson*, there was evidence that an actual failure did occur, that the building itself was damaged, and that such damage would not have occurred had Crissy Fowler complied with the code. There is no logical reason to exclude the building owner from the class designed to be protected by the building code. And, the damages to the building resulting from the failure of the trusses is obviously a type of injury that the code was designed to prevent. An in-struction on negligence *per se* should have been given.

## II.

Aetna next alleges error occurred when the trial court refused to instruct the jury on breach of implied warranty of fitness for particular purpose. We agree.

Section 4–2–315, C.R.S., provides:

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is ... an implied warranty that the goods shall be fit for such purpose."

The questions whether an implied warranty of fitness for a particular purpose is present and whether that warranty has been breached are issues for the trier of fact to resolve. *Lease Finance, Inc. v. Burger*, 40 Colo.App. 107, 575 P.2d 857 (1977); *Stroh v. American Recreation & Mobile Home Corp.*, 35 Colo.App. 196, 530 P.2d 989 (1975).

Where, as here, a plaintiff has produced evidence that goods were "particular" in that they were designed for a "particular" purpose to be used in a "particular" building, and that the seller knew the use to which the product would be put, it was then a jury question whether a warranty existed and whether that warranty was breached. An instruction on this claim should have been given.

## III.

Aetna's final contention is that the trial court erred in dismissing its claim of strict liability. We agree.

The trial court held that strict liability was not a proper theory where, as here, the defective product itself (the trusses) is a part of what needs to be repaired. This is an erroneous statement.

The *Restatement (Second) of Torts* § 402A (1965) on strict liability was expressly adopted in *Hiigel v. General Motors Corp.*, 190 Colo. 57, 544 P.2d 983

(1975). That section provides that strict liability lies if a person

"sells any product in a defective condition unreasonably dangerous to the user or consumer or to *his property* ... [and causes damage or physical harm] to the ultimate user or consumer, *or to his property* ...." (emphasis supplied)

And, in *Hiigel,* our Supreme Court determined that damage to the product itself is covered by the doctrine of strict liability.

The trial court also found strict liability to be inapplicable here because the loss suffered by the owner was an "economic" loss and that "economic" or "commercial" losses are not recoverable under a theory of strict liability. Again, based on *Hiigel v. General Motors, supra,* this was error.

In *Hiigel,* the court declined to extend the doctrine of strict liability to commercial or business losses, and limited damages to the physical harm caused to the property. From this it must be inferred that "commercial or business losses" means lost profits or loss of the benefit of a bargain. *See States Steamship Co. v. Stone Manganese Marine, Ltd.,* 371 F.Supp. 500 (N.J.1973). Aetna, as subrogee, stands in the shoes of the owner and is suing for harm to the property, not commercial or economic loss. It was a fact question as to whether strict liability applied. Therefore, an instruction on strict liability should have been presented to the jury.

The dismissals of the claims of negligence *per se,* breach of warranty of fitness for particular purpose, and strict liability are reversed, and the cause is remanded for a new trial on those claims.

SMITH and BERMAN, JJ., concur.