Steven L. BARTON, Petitioner,

v.

ADAMS RENTAL, INC., d/b/a Adams Rental and Sales, Respondent.

No. 95SC722.

Supreme Court of Colorado,
En Banc.

June 2, 1997.

Edward L. Volpe, P.C., Edward L. Volpe, Denver, for Petitioner.

Godfrey & Associates, P.C., Peter Moyson, Denver, Gallo & Godfrey, Brett Marshall Godfrey, Denver, for Respondent.

Justice SCOTT delivered the Opinion of the Court.

This case involves a question of first impression: must a defendant present evidence of a designated nonparty manufacturer's liability before the defendant is entitled to a jury instruction regarding the nonparty's liability?[1] We conclude that a defendant must offer sufficient evidence of the nonparty's liability before a trial court is obligated to instruct the jury as to nonparty liability. Hence, we answer the question in the affirmative.

This dispute between the parties arises out of an accident in which petitioner, Steven L. Barton (Barton), was seriously injured while operating an electric sewer auger he rented from respondent, Adams Rental, Inc. (Adams Rental). Barton filed an action against Adams Rental based on theories of negligence and strict liability. Pursuant to section 13–21–111.5, 6A C.R.S. (1987 & 1996 Supp.), Adams Rental designated the purported manufacturer of the auger, Burton Power Snake (Burton Power), as a nonparty tortfeasor. At the close of the evidence, however, the trial court refused to instruct the jury on nonparty fault, concluding that insufficient evidence had been presented to establish the liability of Burton Power. Therefore, without considering nonparty liability, the jury returned a verdict in favor of Barton based upon negligence, and apportioned the fault between Adams Rental and Barton.

Adams Rental appealed the trial court's refusal to instruct the jury as to the liability of Burton Power, the designated nonparty. The court of appeals reversed and remanded for a new trial on the negligence claim. See Barton v. Adams Rental, Inc., No. 94CA0870, slip op. (Colo.App. Sept. 21, 1995) (not selected for official publication). The court of appeals held that sufficient evidence had been presented for the jury to conclude that Burton Power's design of the auger and

its failure to provide a warning label contributed to Barton's injury. See Barton, No. 94CA0870, slip op. at 4. On Barton's petition, we granted certiorari. Based on our review of the record and evidence submitted at trial, we conclude that the trial court did not err in excluding Adams Rental's requested instruction as to nonparty liability. Accordingly, we reverse the judgment of the court of appeals.

## I.

On May 11, 1992, Adams Rental leased an electric 100–foot auger to Barton to clear a domestic sewer line. A sewer auger is a motor-powered device that consists of a cone-shaped wire cage and a long cable with a cutting bit affixed at one end. When not in use, the cable is fully coiled inside the cone-shaped wire cage. When the auger is in use, the wire cage rotates at the rate of approximately two cycles-per-second, which also causes the cable and the cutting bit to rotate. To clear a pipe or a sewer line, the operator of the auger extends the cable by pulling it manually out of the wire cage and threading it into the pipe. While Barton was operating the auger and feeding cable into a household pipe, a length of cable came loose from the wire cage, hit the ground, and then struck him in the face and mouth, causing serious injuries.

Barton filed a civil action alleging negligence, failure to warn, and strict liability on the part of Adams Rental. In defending against Barton's claims, Adams Rental designated Burton Power as a nonparty at fault pursuant to section 13–21–111.5, 6A C.R.S. (1987), which states in relevant part:

(1) In an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant....

. . . .

---

1. Our order granting certiorari set forth the following issues:

(1) Whether the court of appeals erroneously determined that the trial court erred in ruling that evidence of design and failure to warn defects was not sufficient to submit to the jury

issues regarding the fault of a nonparty manufacturer.

(2) Whether the court of appeals should have sustained the verdict by reason of the admitted knowledge of Adams of the dangerous condition of this auger.

(3) (a) Any provision of the law to the contrary notwithstanding, *the finder of fact in a civil action may consider the degree or percentage of negligence or fault of a person not a party to the action, based upon evidence thereof,* which shall be admissible, in determining the degree or percentage of negligence or fault of those persons who are parties to such action.

(Emphasis added.)

Based on this pro-rata liability statute, Adams Rental alleged that Burton Power was liable for the injuries to Barton due to defects in the manufacturing process and the failure of Burton Power to warn of the dangers.[2] After both sides had presented their evidence, the trial court refused to include in its charge to the jury an instruction related to the fault of a nonparty, Burton Power.[3] Instead, the trial court dismissed Burton Power as a nonparty stating:

> the Court is of the opinion that there has been no sufficient showing that there is any evidence that the original manufacturer of the [auger], Burton Power Snake, gave it—or rather, manufactured the product in any way before it was given to or arrived in the hands of the defendant that would show that the product was defective whatsoever.

The jury returned a verdict in favor of Barton on the negligence claim for $230,000, assessing 70% of the fault to Adams Rental and 30% to Barton. The jury found in favor of Adams Rental on the strict liability claim.

Adams Rental appealed the judgment to the court of appeals, alleging that the trial court erred in ruling there was insufficient evidence presented as to the liability or fault of Burton Power.

The court of appeals reversed, holding that the trial court erred in refusing to instruct the jury as to the possible responsibility of Burton Power, the designated nonparty, because there had been sufficient evidence presented "with respect to whether Burton Power's design of the machine and its failure to provide a warning label for it also contributed to that injury." *Barton*, No. 94CA0870, slip op. at 4. We disagree and now reverse the judgment of the court of appeals.

## II.

■ Section 13–21–111.5 provides that in civil actions, plaintiffs and defendants may designate nonparties as being wholly or partially at fault,[4] and authorizes the finder of fact to consider the percentage of a nonparty's negligence or fault in apportioning ultimate liability. *See Inland/Riggle Oil Co. v. Painter,* 925 P.2d 1083, 1085 (Colo.1996). The adoption of this statute was intended to cure the perceived inequity under the common law concept of joint and several liability whereby wrongdoers could be held fully responsible for a plaintiff's entire loss, despite the fact that another wrongdoer, who was not held accountable, contributed to the result. *See Hughes v. Johnson,* 764 F.Supp. 1412,

---

**2.** Adams Rental's notice designating Burton Power, which is considered a pleading, does not specifically include a claim for failure to warn. It alleges only "defects in the manufacturing process" generally, which implies design defects and can encompass claims for failure to warn. *See Fibreboard Corp. v. Fenton,* 845 P.2d 1168, 1174 (Colo.1993). At trial and in its briefs before this court and the court of appeals, Adams Rental specifically argued failure to warn principles. For that reason, we view the designation of nonparty as including allegations of strict liability design defects and failure to warn.

**3.** Adams Rental tendered instructions one through eleven, which the trial court refused. Instruction No. 1 reads as follows:

> The affirmative defense of the negligence or fault of the non-party, Burton Power ..., is proved if you find all of the following: (1)

Burton Power ... was negligent or otherwise at fault; and (2) The negligence or fault of Burton Power ... was a cause of the plaintiff's claimed injuries, damages and/or losses.

Instruction No. 3 reads as follows:

> If you find the plaintiff, Steven L. Barton, was damaged and that the plaintiff's damages were caused by the negligence of the plaintiff and defendant Adams Rental ... and/or Burton Power ..., then you must determine to what extent the negligent conduct of each contributed to the damages of the plaintiff, expressed as a percentage of 100%.

**4.** Section 13–21–111.5 encompasses not only negligence claims but also applies to claims of strict liability. *See Miller v. Byrne,* 916 P.2d 566, 578 (Colo.App.1995); *see also O'Quinn v. Wedco Tech., Inc.,* 746 F.Supp. 38, 39 (D.Colo.1990), *aff'd,* 955 F.2d 49 (10th Cir.1992).

1413 (D.Colo.1991); W. Prosser & W. Keeton, *Torts* § 46, at 328 (5th ed. 1984).

■ Through section 13–21–111.5, the General Assembly abrogated this common law principle and codified the rule that each of several wrongdoers is liable for only a portion of plaintiff's injuries, according to each tortfeasor's percentage of fault. *See Moody v. A.G. Edwards & Sons, Inc.,* 847 P.2d 215, 217 (Colo.App.1992); *Hughes,* 764 F.Supp. at 1413. Thus, a defendant in an action brought as a result of injury to person or property may reduce the amount of damages for which the defendant will be liable by demonstrating another person's fault, without that person necessarily being joined as a defendant.[5]

■ According to the unambiguous terms of the statute and the foregoing policies that underlie it, liability may only be apportioned between a defendant and a designated nonparty when admissible evidence has been presented that the nonparty contributed to the plaintiff's injury. *See* § 13–21–111.5(3)(a) ("the finder of fact ... may consider the ... fault of a person not a party to the action, *based upon evidence thereof* ....") (emphasis added); *see also FDIC v. Moll,* 848 F.Supp. 145, 149 (D.Colo.1993) (applying Colorado law and holding that insufficient evidence had been presented to support the apportionment of fault under section 13–21–111.5). Indeed, similar to instructions regarding comparative fault, an instruction regarding nonparty liability should only be submitted to the jury when there is evidence in the record to support such a claim. *See Gordon v. Benson,* 925 P.2d 775, 778 (Colo. 1996) (holding that an instruction to the jury on comparative negligence must be based on competent evidence appearing on the record).

■ Thus, where a defendant designates a nonparty at fault and presents no evidence of liability, the court should not submit that claim to the jury. *See Moll,* 848 F.Supp. at 149–50; *Ramirez v. Mixsooke,* 907 P.2d 617, 619 (Colo.App.1994) (holding that speculation regarding nonparty liability without evidence to support the claim is insufficient for purposes of section 13–21–111.5). Here, Adams Rental designated Burton Power as a nonparty at fault based on claims of "defects in the manufacturing process." While it is unclear whether Adam's Rental argues pursuant to principles of negligence or strict liability,[6] we conclude that under either theory, because defendant Adams Rental failed to submit evidence that Barton Power was the actual manufacturer, there was insufficient evidence presented at trial to support the liability of Burton Power for defective design or failure to warn.

### III.

#### A. Design Defect

■ We first address the evidence presented by Adams Rental in support of its allegation of a design defect. In *Union Supply Co. v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978), we reaffirmed our decision that Colorado law applies the strict liability principles set forth in the *Restatement (Second) of Torts* § 402A (1965), and enumerated the elements of a strict liability design defect claim as follows: (1) the product is in a defective condition unreasonably dangerous to the user or consumer; (2) the product is expected to and does reach the consumer

---

5. Pursuant to C.R.C.P. 20(a), "[a]ll persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences...." Thus, a plaintiff may join a designated nonparty as a defendant if necessary, with the knowledge that by doing so the plaintiff is, of course, subject to sanctions under C.R.C.P. 11. Here, for reasons not reflected in the record, Barton did not name Burton Power as a defendant to the action.

6. In its "Re–Designation of Non–Party," filed after Barton amended his complaint, Adams Rental cited only "manufacturing defects" as the basis of its claim. It appears by this pleading and the nature of the testimony at trial that Adams Rental was asserting strict liability claims based on defective design and failure to warn. However, at oral argument before this court, counsel for Adams Rental argued nonparty liability premised upon negligence principles only. Nevertheless, we analyze the issue under strict liability principles based on the pleadings and the briefs but also note that our result would not differ if analyzed under negligence principles.

without substantial change in the condition in which it was sold; (3) the design defect caused the plaintiff's injury; (4) the defendant sold the product and is engaged in the business of selling products; and (5) the plaintiff sustained damages. *See Pust,* 196 Colo. at 171–73, 583 P.2d at 282–83.

■ To determine whether a product is "unreasonably dangerous" pursuant to the first element set forth in *Pust,* we have adopted a straightforward risk-benefit analysis. *See Ortho Pharm. Corp. v. Heath,* 722 P.2d 410, 414 (Colo.1986), *overruled by Armentrout v. FMC Corp.,* 842 P.2d 175 (Colo. 1992). In *Armentrout,* we made clear that proponents of a design defect claim bear the burden of demonstrating that, on balance, the risk of danger inherent in a challenged design outweighs the benefits of such a design. 842 P.2d at 183.

To determine whether the risks outweigh the benefits, the finder of fact must consider various factors, including:

(1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.

(2) The safety aspects of the product—the likelihood that it will cause injury and the probable seriousness of the injury.

(3) The availability of the substitute product which would meet the same need and not be as unsafe.

(4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

(5) The user's ability to avoid danger by the exercise of care in the use of the product.

(6) The user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.

(7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

*Ortho,* 722 P.2d at 414 (relying on John W. Wade, *On the Nature of Strict Liability for Products,* 44 Miss. L.J. 825, 837–38 (1973)); *see also Armentrout,* 842 P.2d at 184.[7]

Here, by designating Burton Power as a nonparty at fault based on defects in the manufacturing process, Adams Rental became the claimant or de facto plaintiff in a design defect claim. Thus, pursuant to our analysis in *Armentrout,* Adams Rental, rather than Barton, had the burden of presenting evidence in support of its claim. However, the record before us here reveals that Adams Rental presented little or no evidence that would support a design defect claim under the elements set forth in *Pust* and the *Restatement (Second) of Torts* § 402A.

We first note that Adams Rental was required to show that Burton Power sold the product and is engaged in the business of selling such products. *See Pust,* 196 Colo. at 173, 583 P.2d at 283. However, no evidence was presented by either party to establish that Burton Power manufactured the auger that caused the injury. Indeed, our review of the record reveals that no one was able to positively identify the auger as a Burton Power manufactured product. For example, the owner of Adams Rental testified that he did not know where or when he bought the auger, and could not say whether it was bought new or used. In addition, there was no label or marking on the machine indicating the name of the manufacturer or when it was made.

Although Adams Rental offered into evidence a Burton Power catalogue that contained augers similar to the one here, Dr. Richard Passamaneck, the plaintiff's expert witness, testified that when he ordered new parts for the auger from the Burton Power catalogue, they did not fit the machine. Furthermore, when specifically asked whether he had any doubt that Burton Power had manufactured the machine, Dr. Passamaneck replied, "Yeah, I do." Thus, it cannot be

---

**7.** We note here, however, as we did in *Armentrout,* that this list is not exclusive, but merely illustrative of factors which may assist in determining whether a design is unreasonably dangerous. *See Armentrout,* 842 P.2d at 184. For example, the existence of a "feasible design alternative" may be a factor in the risk-benefit analysis. *Id.* at 185 & n. 11.

said, based on the evidence at trial, that Burton Power sold this product and is engaged in the business of selling such products.

Next, even if Adams Rental were able to identify Burton Power as the manufacturer, it nevertheless failed to demonstrate that, as manufactured by Burton Power, the product was "in a defective condition unreasonably dangerous to the user or consumer." *Pust,* 196 Colo. at 171, 583 P.2d at 282. Under the risk-benefit analysis of *Ortho,* Adams Rental was required to demonstrate that the risks of the design of the auger outweighed any benefits. In its attempt to do so here, Adams Rental argued that the open cage design of the auger was unreasonably dangerous and that a minor modification with a plastic or metal shield could have avoided the accident.

Importantly, however, Adams Rental did not present any evidence of its own on the relative risks and benefits of the open cage design. Indeed, the only witness that could testify knowledgeably as to the efficacy of the auger's design was Dr. Passamaneck, Barton's witness. We recognize that while it is feasible that a shield may have made the auger safer, the open cage design may have served an important purpose, functionally or otherwise. In any event, Adams Rental failed to present any testimony that would allow a fact finder to weigh these concerns.

Counsel for Adams Rental did attempt to cross-examine Dr. Passamaneck regarding the open cage design; however, no testimony was elicited that would demonstrate the open cage design was more dangerous than it was necessary or effective.[8] In addition, no evi-

dence was presented of similar accidents where an auger's cable had exited the cage,[9] except for the testimony of an Adams Rental employee who admitted that his accident was caused by his own misuse of the auger.

Thus, based on the factors enumerated in *Ortho* and *Armentrout,* Adams Rental failed to present sufficient evidence to support its position under our risk-benefit analysis that the risks of the design of the auger outweighed its benefits. Although no testimony was presented as to the benefits of the design, the burden rested on Adams Rental to demonstrate that the risks of the original design were inherently dangerous. Any conclusion by a fact finder here that the auger was unreasonably dangerous would have been based wholly on speculation, rather than on the evidence presented. Such a conclusion is improper. *See Ramirez,* 907 P.2d at 619 (holding that speculation regarding nonparty liability, without sufficient evidence, is improper pursuant to section 13–21–111.5).

Second, Adams Rental did not demonstrate that the auger reached the consumer "without substantial change in the condition in which it was sold." *Pust,* 196 Colo. at 171, 583 P.2d at 282. In contrast, Dr. Passamaneck testified that the auger had been altered by the substitution over time of certain essential parts, which, he opined, was the actual cause of the injury to Barton. Adams Rental, on the other hand, provided no evidence that the auger was in substantially the same condition as when it was placed in the stream of commerce by the manufacturer. Thus, Adams Rental also failed to satisfy the

---

**8.** By our ruling today, we do not intend to suggest that the necessary evidence may not be introduced through the cross-examination of the opposing party's witnesses. However, in this case, Dr. Passamaneck testified that because the cable had escaped from the cage while the Adams Rental employee had been using it, steps could have been taken by Adams Rental at that point to make the machine safer, such as putting "a ring between the last ring on the cone and the nose," and putting "a plastic or metal shield on the conical portion of the cage itself" to prevent cable from escaping. However, this testimony does not address the inherent safety of the original, open cage design—only the steps Adams Rental could have taken after being made aware that cable could come out of the cage. More-

over, the employee of Adams Rental who was struck by the cable testified that the cable exited the cage due to his misuse of the auger. Thus, importantly here, there was no evidence presented that, when the machine is properly used, the same accident would necessarily occur.

**9.** On cross-examination, Dr. Passamaneck stated that because the augers on the market today had the shield and ring that he mentioned, he could speculate that "this phenomenon of the cable looping and coming out of the cage has occurred before." However, apart from this witness' speculation, no evidence was presented that, in fact, any similar type of accident had previously occurred.

second element of a design defect claim. *See Restatement (Second) of Torts* § 402A(1)(b).

Third, the claimant in a design defect case is required to demonstrate that the alleged design defect caused the injury. *See Pust,* 196 Colo. at 173, 583 P.2d at 283. Here, Adams Rental presented no evidence, and elicited none from Dr. Passamaneck on cross-examination, that the open cage design of the auger, as opposed to its own modifications or Barton's misuse, caused the injury. Furthermore, as noted above, no evidence was put forth of any similar accidents occurring or that when the auger is properly used, the same accident would necessarily occur. Thus, Adams Rental failed to satisfy this third element under *Pust.*

Despite the failure of Adams Rental to support a design defect claim under the elements set forth in *Pust,* the court of appeals held that sufficient evidence had been presented "with respect to whether Burton Power's design of the machine ... contributed to that injury." *Barton,* No. 94CA0870, slip op. at 4.[10] However, based on our review of the record in light of the *Pust* factors, as set forth in our analysis above, we disagree with the court of appeals' conclusion.

### B. Failure to Warn

Next, we must consider the court of appeals' conclusion that Adams Rental presented sufficient evidence to sustain a claim for failure to warn. Failure to warn claims are not sharply differentiated from design defect claims and often arise in the same context. *See Armentrout,* 842 P.2d at 181. Under Colorado law, "a failure adequately to warn can render a product otherwise free of defects defective for purposes of strict liability recovery." *Hügel v. General*

*Motors Corp.,* 190 Colo. 57, 59, 544 P.2d 983, 986 (1975).

Under strict liability, the test is whether the manufacturer's failure to warn adequately of the potentially dangerous propensities of its product rendered the product unreasonably dangerous. *See Pust,* 196 Colo. at 173, 583 P.2d at 283. Should the manufacturer fail to give warnings of dangers inherent in the product or in its intended use sufficient to make it safe, the product is in a defective condition "unreasonably dangerous" to the user or consumer. *Hügel,* 190 Colo. at 60, 544 P.2d at 987.

A basic premise underlying failure to warn claims is that "[a] manufacturer cannot warn of dangers that were not known to it or knowable in light of the generally recognized and prevailing scientific and technical knowledge available at the time of manufacture and distribution." *Fibreboard Corp. v. Fenton,* 845 P.2d 1168, 1172 (Colo.1993); *see also Restatement (Second) of Torts* § 402A, cmt. j (1965). To make this determination, we held in *Fibreboard* that state-of-the-art evidence is admissible to determine if a product is defective and unreasonably dangerous because of a failure to warn. 845 P.2d at 1175.

In addressing the failure to warn issue, it is of paramount importance that, as noted above, Adams Rental failed to offer evidence that Burton Power was the manufacturer of the auger. Indeed, it was not established when the auger was manufactured, or by whom. Although Dr. Passamaneck testified that the auger was "probably" manufactured by Burton Power, he also stated that he "could not be sure" and answered affirmatively when asked by counsel for Adams Rental if he had doubts whether Burton

---

**10.** The court of appeals relied on Dr. Passamaneck's testimony that Adams Rental could have placed a metal shield around the cage and that Burton Power did so with its later models to demonstrate that Burton Power was aware of the danger presented by the open cage model. The court stated that "[a]lthough this testimony was designed to demonstrate that [Adams Rental] should have made this simple modification, it was equally relevant with respect to a design defect assertion against [Burton Power]." *Barton,* No. 94CA0870, slip op. at 4.

As noted above, however, it was never established that Burton Power did in fact manufacture this auger and, if so, when. Furthermore, even if Burton Power did manufacture the auger, it was not established that, absent modifications admittedly made by Adams Rental or consumer misuse, any such accident had occurred previously. Thus, the expert's testimony as to what Adams Rental should have done when it became aware of the possibility of the cable escaping the cage does not support a claim against Burton Power.

Power manufactured the auger. Based on the lack of evidence in the record, a conclusion that Burton Power manufactured the auger could arise only from speculation.

Because it has not been determined who manufactured the auger, or when, it is impossible to establish a claim for failure to warn. Although the owner of Adams Rental testified that he had not bought an auger for over six years, he testified that he did not know when he purchased this particular auger or whether it was new or used at the time. Thus, even if Burton Power was the manufacturer, we cannot determine when it was manufactured and what dangers were known or knowable to it "in light of the generally recognized and prevailing scientific and technical knowledge available at the time of manufacture and distribution." *Fibreboard*, 845 P.2d at 1172. Indeed, the open cage design could have been the most practically feasible design in light of the state of the art at the time the product was manufactured. *Id.* at 1174.

Thus, despite Dr. Passamaneck's opinion that the auger should have been manufactured with warning labels directing the user not to stand in the plane of rotation of the cage while it was in operation, *see Barton,* No. 94CA0870, slip op. at 4, a jury would be unable to determine whether such dangers were known or knowable at the time of manufacture. For the reasons stated above, we do not agree with the court of appeals that Adams Rental provided sufficient evidence that Burton Power's failure to provide warning labels contributed to Barton's injury.

## IV.

In sum, we conclude that there was insufficient evidence presented at trial from which the jury could have reasonably concluded that Burton Power was liable for defective design or failure to warn. Hence, the trial court was correct in refusing to instruct the jury on nonparty liability. *See Mile Hi Concrete, Inc. v. Matz,* 842 P.2d 198, 205 (Colo. 1992). Based on this disposition, it is unnecessary for us to reach and we decline to discuss the second issue on which we granted certiorari review.

Accordingly, we reverse the judgment of the court of appeals. In doing so, we remand the case to that court with directions that it reinstate the trial court's judgment in favor of Barton.